COMMONWEALTH *vs.* SOLOMON BROWN.

Suffolk.   January 4, 1988. — March 2, 1988.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Firearms. Practice, Criminal,* Required finding.

A criminal defendant's motion for a required finding of not guilty on a charge
    of carrying firearms without a license under his control in a vehicle was
    incorrectly denied, where there was not sufficient evidence to support
    a reasonable inference that the defendant knew firearms were in the
    motor vehicle he was operating. [747-748]


COMPLAINT received and sworn to in the Roxbury Division
of the District Court Department on November 25, 1985.

On appeal to the jury session of the Boston Municipal Court
Department the case was heard by *Barbara A. Dortch,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*William M. Leonard* for the defendant.

*Kevin J. Ross,* Assistant District Attorney, for the Common-
wealth.

LYNCH, J. The defendant was found guilty of carrying a
firearm without a license after a trial de novo in the jury session
of the Boston Municipal Court. The defendant waived a jury,
and the case was decided by a judge. The defendant filed a
timely appeal and we took the case on our own motion. We
reverse.

The only issue that need concern us is the denial of the
defendant's motion for a required finding of not guilty on the
charge of illegal carrying of a firearm.

Viewing the evidence at trial, as we must, in the light most
favorable to the Commonwealth, *Commonwealth* v. *Latimore,*
378 Mass. 671, 676-677 (1979), we summarize the facts. The
Commonwealth's witness, Sergeant Paul Matthews of the Bos-

ton Housing Authority police, testified that on November 22, 1985, at 9:30 A.M., while on patrol on Parker Street in the Mission Hill Housing Project (project) he observed the defendant urinating behind a dumpster near the corner of Parker Street and Horradon Way. Matthews continued on Parker Street and at some point turned around and came back down Parker Street toward Horradon Way.

The defendant, in the meantime, had gotten back into a 1985 Ford Thunderbird automobile and started driving down Parker Street in the same direction Matthews was then heading. There was a passenger in the defendant's automobile. Matthews' unmarked cruiser was directly behind the defendant's automobile. The defendant turned right on Prentiss Street, at which point Matthews activated the police cruiser's blue warning light and siren. He then saw both occupants of the Thunderbird bend over in unison. At this point Matthews' cruiser was still on Parker Street and the defendant's automobile was on Prentiss Street. Matthews said that he saw this movement by the occupants through the rear window and passenger window of the Thunderbird.

When the Thunderbird came to a stop, Matthews got out of his cruiser and approached the defendant's automobile. He went to the driver's side and asked the defendant for his license and registration. The defendant handed him a valid driver's license and a photocopy of a car rental agreement. Matthews radioed in the license plate number for a stolen motor vehicle check, and for a warrant check on the defendant. Matthews received information that the automobile, which was owned by Avis car rental company, had been reported stolen. Matthews then radioed for backup and remained in his police cruiser until several other Boston Housing Authority police officers arrived.

When the other officers arrived, Matthews again approached the defendant's automobile. He stated at trial that it was his intention at this time to arrest the defendant and the passenger for larceny of a motor vehicle. Matthews went to the driver's side and ordered the defendant to get out. Another officer, Sergeant Steven Sullivan, ordered the passenger to get out.

After the defendant had been removed from the vehicle, Matthews searched it and found two loaded handguns under the front passenger seat. Both the defendant and the passenger were placed under arrest for unlawful carrying of a firearm and larceny of a motor vehicle.

The defendant claims that the evidence recited above required the judge to make a finding of not guilty, because there was not enough evidence that the defendant had knowledge of the presence of the handguns in the automobile. We agree.

In reviewing the denial of a motion for a required finding of not guilty, we view the evidence in the light most favorable to the Commonwealth in order to determine whether the evidence was sufficient to satisfy a rational trier of fact of each element of the offense beyond a reasonable doubt. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979), citing *Jackson* v. *Virginia,* 443 U.S. 307 (1979). The relevant question is whether the evidence would permit a jury to find guilt, not whether the evidence requires such a finding. *Commonwealth* v. *Nelson,* 370 Mass. 192, 200-201 (1976). The evidence presented in this case, viewed in the light most favorable to the Commonwealth, would not permit a rational fact finder to conclude that the defendant was guilty.

Under G. L. c. 269, § 10 (*a*) (1986 ed.), the statute under which the defendant was convicted, the evidence must be sufficient to warrant a reasonable inference that the defendant had personal knowledge of the presence of firearms in the automobile. *Commonwealth* v. *Bennefield,* 373 Mass. 452, 453 (1977). *Commonwealth* v. *Collins,* 11 Mass. App. Ct. 583, 584 (1981). " 'It is not enough to place the defendant and the weapon in the same car.' . . . Presence alone cannot show the requisite knowledge, power, or intention to exercise control over the firearm, but presence, supplemented by other incriminating evidence, 'will serve to tip the scale in favor of sufficiency.' " *Commonwealth* v. *Albano,* 373 Mass. 132, 134 (1977), quoting *Commonwealth* v. *Boone,* 356 Mass. 85, 87 (1969), and *United States* v. *Birmley,* 529 F.2d 103, 108 (6th Cir. 1976). In this case, there is not sufficient evidence to support a reasonable inference of personal knowledge.

The weapons were not in plain view, but rather were under the passenger seat, which was occupied by a person other than the defendant. See *Commonwealth* v. *Almeida,* 381 Mass. 420, 422 (1980); *Commonwealth* v. *Bennefield,* 373 Mass. 452, 453 (1977). There was nothing in the defendant's activity prior to the search that might lead one reasonably to believe he knew there was a firearm in the automobile. See *Commonwealth* v. *Albano, supra* at 134. The defendant made no damaging admission to the police concerning the guns. See *Commonwealth* v. *Miller,* 297 Mass. 285, 286-287 (1937); *Commonwealth* v. *Hill,* 15 Mass. App. Ct. 93, 95 (1983). Evidence of the occupants' bending forward in unison does not support an inference that the defendant placed a gun under the passenger seat.

In *Commonwealth* v. *Almeida, supra,* we reversed a conviction under G. L. c. 269, § 10 (*a*), where the evidence as to the defendant's knowledge of the presence of a firearm in the vehicle consisted of a police officer's statement that he had seen the defendant "shift[ ] in his seat . . . to move over towards the door itself" and the fact of the gun's presence in the automobile. *Id.* at 422. As with the defendant here, the defendant in *Almeida* did not own the automobile, but rather had borrowed it. We discern no material distinction between this case and *Almeida.* In either case, the trier of fact "would have had to speculate that the defendant knew the gun was [concealed in] a car he borrowed that evening, merely from his presence in that car." *Id.* at 423. Therefore, we believe that the evidence was insufficient "to warrant a reasonable inference of personal knowledge of the presence of the gun[s]," and the conviction cannot stand. *Id.,* quoting *Commonwealth* v. *Bennefield,* 373 Mass. 452, 453 (1977).

*Judgment reversed.*

*Finding set aside.*

*Judgment for the defendant.*