COMMONWEALTH *vs.* SATURNINO GARCIA, JR.
(and a companion case[1]).

Worcester. December 5, 1990. - April 3, 1991.

Present: LIACOS, C.J., ABRAMS, O'CONNOR, & GREANEY, JJ.

*Constitutional Law*, Search and seizure, Privacy. *Search and Seizure*, Arrest, Motor vehicle, Container, Expectation of privacy. *Practice, Criminal*, Motion to suppress. *Eavesdropping. Controlled Substances.*

Evidence at the hearing on two criminal defendants' pretrial motions to suppress evidence warranted the judge's conclusion that a noninvestigative inventory search of an impounded motor vehicle, which resulted in the seizure of a quantity of cocaine from the vehicle's locked trunk, had been conducted by State police in accordance with established policy. [678-680]

A noninvestigative inventory search by police of an impounded motor vehicle, authorized by written procedures that imposed on the police the responsibility for taking inventory of and safeguarding the contents of such a vehicle, reasonably included, under the Federal and State Constitutions, opening the locked trunk of the vehicle. [680-685]

Failure of a State police officer to secure the signature of a tow truck operator on an inventory form listing the contents of an impounded vehicle, as was required by applicable police procedures, did not affect the legality of the officer's seizure of a quantity of cocaine during his noninvestigative inventory search of the vehicle. [685]

In the circumstances an arrested person had no constitutionally protected expectation of privacy in the statements he made on a telephone at a State police barracks while in the presence of two officers, and, at his trial, the officers were properly allowed to testify as to the statements. [685-686]

At the trial of two defendants charged with trafficking in cocaine in violation of G. L. c. 94C, § 32E, evidence that the State police discovered cocaine in the locked trunk of a third party's motor vehicle, which one of the defendants was driving and in which the other was riding as a passenger, was not sufficient alone to prove the defendants' knowledge that cocaine was present and their intent to control it. [686-688]

---

[1]Commonwealth *vs.* Alberto F. Heredia.

INDICTMENTS found and returned in the Superior Court Department on April 5, 1989.

Pretrial motions to suppress evidence were heard by *Robert V. Mulkern*, J., and the cases were tried before *James P. Donohue*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John J. Russell* for Saturnino Garcia, Jr.

*James E. McCall* for Albert F. Heredia.

*Claudia R. Sullivan*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendants, Saturnino Garcia and Alberto Heredia, appeal from convictions of trafficking in cocaine in violation of G. L. c. 94C, § 32E. Both defendants contend that the trial judge improperly denied their motions to suppress cocaine seized from the trunk of the vehicle which Garcia drove and in which Heredia was a passenger. Heredia also claims error in the judge's denial of a motion to suppress statements he made while in the police station. Garcia claims that the judge should have allowed his motion for a required finding of not guilty. We agree with Garcia that the evidence against him was insufficient to support a conviction. We also conclude that the cocaine was properly admitted in evidence, and that Heredia's statements also were properly admitted. We therefore reverse Garcia's conviction and affirm Heredia's conviction.

We set forth the facts as found by the judge. Garcia was driving a vehicle on Route 84 in Sturbridge at about 1:30 A.M. on January 24, 1989. Heredia was a passenger in the vehicle. A State trooper stopped the vehicle because it was exceeding the speed limit, and asked Garcia for his driver's license and motor vehicle registration. Garcia produced a motor vehicle registration showing the owner of the vehicle as Jose Marte. Garcia was unable to produce a driver's license. Heredia showed the trooper his driver's license. Garcia told the trooper that he was a licensed driver, although he did not have the license on his person. The trooper used his cruiser radio to request a computer check on the status of

Garcia's license. The computer did not indicate that Garcia held a driver's license. Garcia, however, continued to insist that he held a valid license. As a result, the trooper requested that Garcia return with him to the nearby State police barracks so that the question of Garcia's license could be clarified. Garcia agreed. The trooper led the way in his cruiser. Heredia drove the other vehicle and followed the trooper. Heredia parked the vehicle directly in front of the State police barracks. Heredia and Garcia waited in the lobby of the barracks while the trooper ran further checks on the licenses of both Garcia and Heredia. He discovered that no license was in effect for Garcia, and that several warrants were outstanding for the arrest of Heredia. The warrants were for drug-related offenses, and were "nonbailable." The trooper arrested each defendant. At some point, the trooper telephoned directory assistance in Boston in an attempt to locate Jose Marte, the owner of the vehicle. He did not discover Marte's telephone number. He asked another trooper to call a tow company to remove the vehicle, and to begin an inventory of the vehicle. The second trooper took the vehicle's keys and performed an inventory search of the vehicle. In the course of this procedure, he unlocked the trunk of the vehicle and inspected it. There were various items in each of the wheelwells in the trunk. One of these items was a brown paper bag, about six inches by twelve inches. The top of the bag was wrinkled, as if it had been rolled up, but was no longer rolled up. The trooper picked up the bag and observed that the bag contained a hard, brick-shaped substance. He could see that the substance was wrapped in aluminum foil. He unwrapped the foil slightly, and observed an inner wrapping of foil which was heat sealed. One corner of the inner foil was split, and the trooper could see a white substance. The trooper knew from his training and experience that cocaine is often packaged in this manner. He then seized the bag, which later analysis proved to contain cocaine. An inventory form was completed, and the vehicle was towed. Garcia and Heredia were convicted of trafficking in cocaine. We transferred their appeal to this court on our own motion.

1. *Motion to suppress the cocaine.* Both defendants contend that the judge erred in denying their motions to suppress the cocaine seized from the trunk of the vehicle. Heredia argues that the search violated his rights under the Fourth Amendment to the United States Constitution. Garcia argues that his rights under art. 14 of the Massachusetts Declaration of Rights also were violated. The motions to suppress filed by the defendants sought the suppression of the cocaine seized as a result of the inventory search.

A. *The impoundment of the vehicle.* On appeal, both defendants argue that the inventory search was improper because the police were not justified in impounding the vehicle.[2] We agree that the propriety of the impoundment of the vehicle is a threshold issue in determining the lawfulness of the inventory search. Neither defendant, however, raised this issue at the suppression hearing or at trial. Thus, the judge made no findings of fact concerning the circumstances attending the impoundment of the vehicle at the police barracks.[3] Nor are there any findings of fact whether the automobile was lawfully parked where it was first stopped and need not have been driven to the station.

"An issue not fairly raised before the trial judge will not be considered for the first time on appeal. *Commonwealth* v. *Lewis*, 346 Mass. 373, 383 (1963), cert. denied, 376 U.S. 933 (1964)." *Commonwealth* v. *Marchionda*, 385 Mass. 238,

---

[2]The Commonwealth contends that the trooper performed a proper inventory search. It does not attempt to justify the search as based on probable cause.

[3]The Commonwealth points to the following factors as support for the contention that the impoundment was proper. Neither defendant could have driven the vehicle from the barracks after the arrests because Garcia had no license and Heredia had been arrested on nonbailable warrants. Neither defendant was the owner of the vehicle, and the trooper was unsuccessful in contacting the owner. The barracks are in an isolated area, and, even if police had been able to contact the owner, it would have been several hours before the owner could have arrived. Leaving the vehicle in the parking lot might have caused problems because of snow removal or crowding in the lot. Finally, even if the police had left the vehicle in the State police parking lot, they would have been responsible for its contents, and therefore would have been obliged to inventory its contents.

242 (1982). *Commonwealth* v. *Cote*, 386 Mass. 354 (1982). See *United States* v. *Medina*, 887 F.2d 528, 533 (5th Cir. 1989); *United States* v. *Acevedo*, 842 F.2d 502, 508 (1st Cir. 1988); *United States* v. *White*, 766 F.2d 22, 25 (1st Cir. 1985); *United States* v. *Whitten*, 706 F.2d 1000, 1012 (9th Cir. 1983), cert. denied, 465 U.S. 1100 (1984). While we do have the power to consider such issues, we exercise it only in the rare instance of a serious error which creates a substantial risk of a miscarriage of justice. *Commonwealth* v. *Oakes*, 407 Mass. 92, 94-95 (1990). *Commonwealth* v. *Pares-Ramirez*, 400 Mass. 604, 609 (1987). This is not such a case. The parties failed to develop any evidence on the issue of the propriety of the impoundment of the vehicle, either at the suppression hearing or at trial. Because the defendants failed to raise this issue below, they cannot raise it on appeal.

Heredia also claims that the police impounded the vehicle in order to gain a pretext for an investigative search because there was no probable cause to search the vehicle. Heredia's counsel argued at the suppression hearing that the trooper opened the trunk because he was looking for drugs. The judge, however, found that an inventory search was performed in accordance with established State police procedures. "In reviewing the denial of a motion to suppress, we accept the motion judge's subsidiary findings of fact absent clear error." *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990). The fact that police know of an outstanding warrant does not render unlawful any subsequent inventory of a towed vehicle. "[T]aking an inventory of the contents of a [vehicle] about to be towed or impounded is a reasonable procedure; and the fact that the searching officer may have harbored a suspicion that evidence of criminal activity might be uncovered as a result of the search should not vitiate his obligation to conduct the inventory." *Commonwealth* v. *Matchett*, 386 Mass. 492, 510 (1982), quoting *Commonwealth* v. *Tisserand*, 5 Mass. App. Ct. 383, 386-387 (1977).

The facts found by the judge and supported by the evidence at the suppression hearing indicate that the trooper asked Garcia to accompany him to the State police barracks

rather than issuing him a citation on the road because of Garcia's continued insistence that he was licensed. The trooper did not ask the defendants about contraband when he stopped the vehicle or when he arrested them. The trooper called the tow truck almost immediately after he arrested the defendants, and the vehicle was towed shortly thereafter. Written standard procedures required that an inventory be made when a vehicle was towed. A trooper prepared an inventory list of those items which were left with the vehicle, for which the police department would be liable.

The facts of this case distinguish it from the ruling in *Commonwealth* v. *Woodman*, 11 Mass. App. Ct. 965 (1981), that an inventory search was unlawful. In *Woodman*, the defendant had been arrested for assault and battery by means of a dangerous weapon. His vehicle was taken to the police station where it remained for two days. An officer, according to his own testimony, then searched the vehicle in order to perform an inventory as well as to look for a missing knife. The Appeals Court concluded that the knife discovered by the officer must be suppressed because the search was not lawful as a noninvestigative inventory search. The fact that the officer was looking for a knife led the Appeals Court to conclude that the inventory search was unlawful. Those facts are not relevant to the issue in this case. The judge's conclusion that the trooper conducted an inventory search according to the requirements of established policy is supported by the evidence.

B. *Inventory procedure.* The defendants next argue that the trial judge should have suppressed evidence of the cocaine because police were not authorized by written procedures to open a locked trunk in the course of an inventory search.

The Fourth Amendment does not prohibit inventory searches of impounded vehicles when police act pursuant to reasonable police regulations administered in good faith. *South Dakota* v. *Opperman*, 428 U.S. 364 (1975). The Supreme Court has emphasized that inventory searches are to be conducted according to standardized criteria. *Florida* v.

*Wells*, 110 S. Ct. 1632, 1635 (1990). *South Dakota* v. *Opperman, supra*. Standard procedures reduce the discretion of police to search at will, and so lessen the possibility that police will use inventory procedures as investigative searches. This court also has stressed the importance of standardized procedures in determining whether an inventory search passes constitutional muster. *Commonwealth* v. *Ford*, 394 Mass. 421 (1985). *Commonwealth* v. *Matchett*, 386 Mass. 492 (1982). Thus, we have held that art. 14 of the Massachusetts Declaration of Rights requires that evidence seized during an inventory search must be suppressed unless the search was conducted pursuant to standard police procedures. Police procedures can be considered "standard" only if they are set forth in writing. *Commonwealth* v. *Bishop*, 402 Mass. 449, 451 (1988).

At the time of the defendants' arrest, two written State police policies governed the actions of the State troopers. State police policy OPR-26 authorized the State trooper in Sturbridge "to conduct and record an inventory of the contents of vehicles towed, removed, or stored . . . as the result of a police action." Policy OPR-26A directed that "[a]ny vehicle in lawful custody of the [State police] shall be examined and an inventory of the contents and general condition of the vehicle shall be recorded on the inventory form." The policy expressly assigned to the person requesting the tow the responsibility of securing "any monies or articles of value that cannot be properly secured by the tow company."[4] Both defendants, however, argue that these written procedures did not authorize the trooper to open a locked trunk as part of an inventory search. Heredia stresses the discretion that is left to the police officer under these procedures and suggests that the procedures are not detailed enough to constitute standard written procedures. Garcia argues more nar-

---

[4]This version of procedure OPR-26A was replaced. The later version includes a specific list of situations in which a vehicle is to be impounded and a detailed list of the areas to be searched.

rowly that the procedures are silent as to locked trunks, and therefore cannot authorize the opening of locked trunks.

This is the first time that we have had occasion to decide in what circumstances a police officer may open a locked trunk in the course of a noninvestigative inventory search. We have suggested in dicta, however, that it may be necessary to open a locked trunk in order to conduct an inventory search. *Commonwealth* v. *Ford*, 394 Mass. 421, 425-426 n.3 (1985). We now look more closely at the purposes of allowing warrantless inventory searches to assess more carefully the propriety of opening the locked trunk in this case.

We have recognized three separate interests which are protected by permitting police to conduct warrantless inventory searches: the protection of the vehicle and its contents; the protection of the police and the tow company from false charges; and the protection of the public from the dangerous items which might be in the vehicle. *Matchett, supra.* Two of these purposes, the protection of the vehicle and its contents and the protection of the reputation of the police and tow company, are part of the policy governing the State police in this case. In order to achieve these goals, many States have concluded that it is reasonable for police to open the trunk, as well as the passenger compartment, in order to complete an inventory. See *State* v. *Roth*, 305 N.W.2d 501 (Iowa), cert. denied, 454 U.S. 870 (1981); *State* v. *Fortune*, 236 Kan. 248 (1984); *Fallon* v. *State*, 725 P.2d 603 (Okla. Crim. App. 1986); *State* v. *Flittie*, 425 N.W.2d 1, 5 (S.D. 1988); *State* v. *Howard*, 645 S.W.2d 751 (Tenn. 1982). A vehicle owner may be just as likely to store valuables in a trunk as in the passenger area of the vehicle. See *State* v. *Prober*, 98 Wis.2d 345, 353-354 (1980), overruled in part on other grounds, *State* v. *Weide*, 155 Wis. 2d 537 (1990); K.B. Smith, Criminal Practice and Procedure § 274 (1983). While a locked trunk may be somewhat more secure than a locked passenger area, it is certainly not invulnerable to vandalism or theft. See *State* v. *Roth, supra* at 505. Protection of the police department and the tow company also requires inventory of both the basic compartments of a vehicle. An owner

could as easily make a false claim that police or tow company negligence had resulted in the loss of an item from the trunk as an item from the passenger area. See *Prober, supra* at 354. For these reasons, several courts have expressed the view that there is no reason to distinguish between an inventory of the passenger area and an inventory of a trunk. See *State v. Roth, supra; State v. Fortune, supra; State v. Ruffino,* 94 N.M. 500 (1980); *State v. Flittie, supra; State v. Prober, supra.* Some courts thus have referred to items as "in plain view" when the items were discovered upon opening the trunk. See *People v. Meeks,* 194 Colo. 214 (1977); *State v. Gwinn,* 301 A.2d 291 (Del. Super. Ct. 1972). Additionally, some courts have stated that, because a vehicle trunk is in effect a "container" that is no more secure than the vehicle itself, the purposes of an inventory search cannot be attained without opening the trunk. *People v. Meeks, supra. Prober, supra* at 354-355.[5]

---

[5]Not all States recognize the necessity of opening a trunk in the course of an inventory search. See *State v. Sawyer,* 174 Mont. 512 (1977), overruled on other grounds, 216 Mont. 65 (1985); *State v. Houser,* 95 Wash. 2d 143 (1980); *State v. Goff,* 166 W. Va. 47 (1980). However, "the obvious trend is away from the plain view limitation" which prohibits the opening of automobile trunks. *State v. Fortune,* 236 Kan. 248, 256 (1984). Kansas formerly had a rule that restricted inventory searches to articles in plain view. After reviewing developments in the Federal and State case law and reconsidering the purpose of routine inventory searches, the Kansas Supreme Court concluded that "an inventory search of the vehicle, including customary storage areas such as the glove box and trunk, is clearly justified . . . ." *State v. Fortune, supra* at 257 (approving the opening of a locked trunk as part of a routine inventory search). After the Supreme Court ruled that an inventory search of a glove compartment did not violate the Fourth Amendment, *South Dakota v. Opperman,* 428 U.S. 364 (1976), the South Dakota Supreme Court ruled on remand that the State Constitution permitted inventory searches only of items in plain view. *State v. Opperman,* 247 N.W.2d 673, 675 (S.D. 1976). The South Dakota court recently altered that State rule to permit inventory searches of a locked trunk. *State v. Flittie,* 425 N.W.2d 1 (S.D. 1988). Colorado also has followed a similar path. Compare *People v. Grana,* 185 Colo. 126 (1974) (where defendant's vehicle was placed in a secured storage lot, inventory search must be limited to items in plain view), with *People v. Meeks,* 194 Colo. 214 (1977) (evidence discovered in a trunk during an inventory search admissible against defendant).

We conclude that the best approach is to consider that a noninvestigative inventory search of a vehicle, aimed at protecting the contents of the vehicle, the police department, and the tow company, reasonably includes opening a locked trunk. In Massachusetts, such a search must be conducted pursuant to written police procedures. See *Commonwealth* v. *Bishop*, 402 Mass. 449 (1988). Although procedures OPR-26 and OPR-26A do not specifically mention opening the trunk, they do impose on the police the responsibility for safeguarding the contents of the vehicle, and they direct that an inventory be taken of the contents of the vehicle. These procedures do not leave police with improper discretion as to whether to open the trunk. There are only two major compartments of a vehicle: the passenger area and the trunk. This procedure requiring inventory of the vehicle is sufficient to direct police to enter both compartments. The search was not unreasonable under either the Fourth Amendment or art. 14 of the Massachusetts Declaration of Rights.

Both defendants argue further that the cocaine should be suppressed because procedures OPR-26 and OPR-26A do not specifically authorize the opening of closed containers in the course of an inventory search. We join other courts in distinguishing the propriety of opening a trunk in the course of an inventory search from the propriety of opening a closed container in the course of such a search. See *People* v. *Meeks*, 194 Colo. 214 (1977); *State* v. *Gwinn*, 301 A.2d 291, 294 (Del. Super. Ct. 1972); *Fallon* v. *State*, 725 P.2d 603, 605 (Okla. Crim. App. 1986). Our conclusion that a procedure directing an officer to inventory the contents of a vehicle is sufficient to direct him to open the trunk does not extend to the opening of a closed container. See *Commonwealth* v. *Bishop*, 402 Mass. 449 (1988). See also *State* v. *Gwinn*, *supra*. We have made it clear that, if police open a closed container during an inventory search in the absence of a specific written procedure requiring them to do so, then any evi-

dence they discover in the container must be suppressed.[6] *Commonwealth* v. *Bishop, supra* at 451.

In this case, however, the judge found that the paper bag containing the cocaine was not a closed container. After hearing testimony and looking at the bag, the judge found that the top of the bag was open when the bag was discovered. He also found that, when the trooper picked up the bag, he could tell by the look and feel of the bag that it likely contained contraband. In light of the judge's findings of fact, there was no error in the judge's conclusion that the motions should be denied.

Finally, the defendants point to the trooper's failure to obtain the signature of the tow truck operator on the inventory form as required by procedure OPR-26A. Heredia argues that this is evidence that the inventory was a pretext for an investigative search; Garcia argues that this failure made the entire search unlawful. We agree with the motion judge that this deficiency does not affect the defendants' constitutional rights.

2. *Admissibility of Heredia's statements.* Heredia claims that it was violation of his Fourth Amendment rights when the State troopers were allowed to testify as to statements made by Heredia in the course of a telephone call made from the police barracks.

Two State troopers testified that, after the arrest, one of the troopers helped Heredia to place a telephone call to Florida. The two troopers were near Heredia as he spoke on the telephone and overheard part of his conversation. During the conversation, Heredia said, "I got busted. . . . They got most of it."

The threshold question in examining a Fourth Amendment issue is whether a person had a "constitutionally protected reasonable expectation of privacy." *California* v. *Ciraolo,* 476 U.S. 207, 211 (1986), quoting *Katz* v. *United States,*

---

[6]We have left unanswered the question whether an inventory search of a closed container that is conducted pursuant to a written standard procedure is permissible under art. 14 of the Massachusetts Declaration of Rights. *Commonwealth* v. *Bishop, supra* at 451 n.1.

389 U.S. 347, 360 (1967) (Harlan, J., concurring). See *Commonwealth* v. *Panetti*, 406 Mass. 230, 231 (1989). The defendant in this case spoke on a telephone at the police barracks. The evidence indicates that two State troopers were present, within approximately four to five feet of the defendant. One of the troopers helped him to place the telephone call. The defendant knew the troopers were in the room. The defendant spoke in a normal voice. In these circumstances, the defendant did not have a reasonable expectation of privacy. The judge did not err in allowing the troopers to testify as to the inculpatory statements they overheard.[7]

3. *Required finding of not guilty.* Each defendant made a motion for a required finding of not guilty at the close of the Commonwealth's case. Both motions were denied. Both defendants contend that the denial of the motions was error.

When reviewing the denial of a motion for a required finding of not guilty, we look at the evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985). The defendants were convicted of trafficking in cocaine under G. L. c. 94C, § 32E. The Commonwealth must prove "possession" of the contraband. " 'Possession implies "control and power," . . . exclusive or joint, . . . or, in the case of "constructive possession," knowledge coupled with the ability and intention to exercise dominion and control.' *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563, 567 (1980) (citations omitted)." *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. 495, 498 (1984). The Commonwealth may prove that the defendant had knowledge of the contraband by circumstantial evidence, if the evidence warrants a reasonable inference to that effect. See *Commonwealth* v. *Brown*, 401 Mass. 745, 747 (1988); *Commonwealth* v. *Rosa*, *supra* at 498. Discovery of contraband in the same automobile with the defendant, without more, is not

---

[7]Trial counsel did not object to the admission of the statements. Heredia claims that trial counsel's failure to object to the admission of these statements constitutes ineffective assistance of counsel. Because the statements were admissible, there is no basis for Heredia's claim of ineffective assistance of counsel. See *Commonwealth* v. *Saferian*, 366 Mass. 89 (1974).

sufficient evidence to warrant a finding of possession. *Commonwealth* v. *Brown, supra* at 747. *Commonwealth* v. *Boone*, 356 Mass. 85, 87 (1969). Presence in the same vehicle supplemented by other incriminating evidence, however, may suffice to show knowledge or intent to control. *Brown, supra* at 747. In the present case, the cocaine was discovered in the locked trunk of a vehicle which did not belong to either defendant. It was not within the plain view of the defendants, a circumstance which might have supported an inference that they had knowledge of it. See *Commonwealth* v. *Almeida*, 381 Mass. 420, 423 (1980). The Commonwealth does not allege that before the arrests either defendant gave any indication of knowledge that drugs were in the vehicle. After his arrest and the inventory search, police overheard Heredia say, "I got busted. . . . They got most of it." As discussed above, this statement was admissible against Heredia. The jury was warranted in inferring from this statement that Heredia knew that the cocaine was present in the vehicle. Heredia's motion for a required finding of not guilty was properly denied.

The Commonwealth agrees with Garcia that the statements made by Heredia did not inculpate Garcia and were not admissible against him. The sum of the Commonwealth's evidence against Garcia is his presence in the vehicle where the cocaine was discovered. The Commonwealth contends that an additional factor pointing to knowledge can be found in the fact that the cocaine was extremely valuable. The Commonwealth argues that it is unlikely that anyone would lend a vehicle containing such valuable contents unless the borrowers knew of those contents, and that therefore a jury could infer that both Heredia and Garcia knew of the cocaine. This argument is simply another way of stating that one can infer knowledge of contraband from its presence in a vehicle. As the Commonwealth concedes, presence alone is not sufficient to prove knowledge and intent to control contraband. There was insufficient evidence to prove that Garcia had knowledge of the cocaine, and thus had constructive pos-

session of it. The trial judge erred in denying Garcia's motion for a required finding of not guilty.

The judgment against Garcia is reversed, the verdict is set aside. Judgment of acquittal should be entered in the Superior Court. The judgment against Heredia is affirmed.

*So ordered.*