COMMONWEALTH *vs.* ROBERT HANDY.

No. 90-P-749.

Suffolk. February 11, 1991. - June 26, 1991.

Present: BROWN, GILLERMAN, & LAURENCE, JJ.

*Controlled Substances.*

At the trial of an indictment for trafficking in cocaine, the Commonwealth
did not establish the element of the defendant's actual or constructive
possession of the forty-eight grams of cocaine seized by police in the
house in which the defendant was present when arrested. [779-782]

INDICTMENT found and returned in the Superior Court De-
partment on February 7, 1989.

The case was tried before *Sandra L. Hamlin*, J.

*John T. Burns* for the defendant.

*Lauren Inker*, Assistant District Attorney, for the
Commonwealth.

LAURENCE, J. Robert Handy appeals from his conviction
upon an indictment charging him with trafficking in cocaine
on December 15, 1988, by unlawfully, knowingly and inten-
tionally possessing with intent to distribute more than
twenty-eight grams of cocaine in violation of G. L. c. 94C,
§ 32E. He contends that the trial judge erred in denying his
motion for a required finding of not guilty, which was made
at the close of the Commonwealth's case and renewed at the
close of all the evidence.[1] We conclude that the evidence was
legally insufficient to sustain a conviction on the trafficking
charge. The Commonwealth did not establish an essential el-
ement of the crime charged, Handy's actual or constructive

---

[1]Handy also bases his appeal on several other asserted errors, including
the improper introduction of evidence of several prior convictions and the
judge's failure to instruct the jury as to a lesser included offense. In view
of our reversal of his conviction, we need not address those issues.

possession of the forty-eight gram stash of cocaine seized by the police at the house where he was arrested.

Viewing, as we must, the evidence and all reasonable inferences therefrom in the light most favorable to the prosecution, *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985); *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989), in order to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, *Commonwealth* v. *Pope*, 406 Mass. 581, 584 (1990); *Commonwealth* v. *Good*, 409 Mass. 612, 617 (1991), we summarize the facts that the jury could have found.

From December 12 through December 14, 1988, Boston police officers McGill and Flynn conducted a nighttime surveillance of a two-story house at 41 Lawrence Avenue, Dorchester. At various times, they saw people go up to the door, knock, talk to someone and leave. On the evening of December 14, McGill watched the house for approximately one hour from about seventy-five to one hundred yards away, using ordinary binoculars without any light enhancement feature. The house had no porch or entryway light, but a light was on within the house, and the street was well lit. McGill observed fifteen to twenty people come up to the door, some of whom he saw pass some currency. The person who answered the door would open it "slightly," "take the money, go back inside, and then return and would hand something to the person who had handed them the money." McGill stated that an individual who he later learned was Handy answered the door "two, maybe three" times in this fashion. Four or five of the people who had gone up to the door examined what they had received as they left the house near a street light, allowing McGill to note that the objects appeared to be small, plastic, fuse-like vials. McGill testified that in previous crack cocaine arrests the police had found similar vials, which are commonly used for packaging illicit drugs for retail distribution. He was unable to tell "for sure" that what was being passed on December 14, was drugs; he "assumed" it was, based upon his prior experience.

On the basis of this surveillance, McGill applied for and received a no-knock search warrant for 41 Lawrence Avenue on December 14, which he, Flynn and eight other police officers executed the next day, December 15, 1988. As they ran up the porch stairs toward the front door of the house, the officers observed a juvenile standing in the doorway, who began shouting "5-0." The door was then apparently shut, for McGill testified he had to smash through it with a sledge hammer. A number of people inside the house ran from the front of the house to the rear. McGill saw Handy flee down a hallway to the rear right corner of the first floor. McGill and another officer caught up with and arrested him trying to get out of a window that had bars on the outside which prevented any exit.[2]

On the second floor, which was unoccupied, Flynn discovered a kitchen area that contained a table, four or five chairs, scales, a small sink and refrigerator, a stove and plastic bags. A Bunsen burner was on a hot plate. A search resulted in the recovery of a bag containing a white substance, eight tin foil packages, a white rock substance, one tin foil of white powder,[3] a box of baking soda, a box of tin foil, a beam scale, plastic bags and $2,128 in mostly ten and twenty dollar bills. No drugs or paraphernalia were found on the first floor, which was largely empty except for a few pieces of furniture. No fuse-like vials were found on Handy or anywhere in the house. No marijuana (which Handy testified he had stopped by the house to purchase a few minutes before the raid occurred, as he admitted he had on a few prior occasions) was discovered in the house or on Handy's person. Although the police looked deliberately, their search uncovered no books, papers, clothing or other belongings linking Handy to the second floor where the drugs were found or to occupancy of the house. At the time of his arrest, Handy had on his person

---

[2]The police also arrested six other persons who were in the house at the time.

[3]The police found more than forty-eight grams of cocaine in their search. The white substance in the plastic bag alone contained 46.34 grams of cocaine with an assay value of eighty-three percent.

keys, a ring, cigarettes, some change and an empty black wallet.

This evidence could be viewed as placing Handy inside the first floor of the house on 41 Lawrence Avenue on one occasion prior to December 15, 1988, answering the door several times and taking money in exchange for small plastic vials. The jury might reasonably infer that these vials had contained some kind of contraband, possibly even derived from the cocaine found on the second floor during the search of the house. See *Commonwealth* v. *Merola*, 405 Mass. at 533 (inferences drawn from circumstantial evidence "need only be reasonable and possible . . . not . . . necessary or inescapable," quoting from *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 [1977]). The evidence went no further than that, however, and did not establish the Commonwealth's trafficking charge beyond unacceptable conjecture or surmise. See *Commonwealth* v. *Ancillo*, 350 Mass. 427, 432-433 (1966).[4]

The case against Handy and this appeal turn on the sole question whether the Commonwealth presented sufficient evi-

---

[4]The Commonwealth on several occasions conceded that its case against Handy rested solely on his asserted possession of the cocaine found on the second floor of the 41 Lawrence Avenue house on December 15, 1988, and not on his alleged participation in the distribution of the vials on prior days. In her closing, the prosecutor admitted that McGill was unable to state what was in the vials. The fact that Handy exchanged small plastic vials for money was insufficient to connect him to trafficking in cocaine. No evidence existed as to the nature or quantity of whatever substances were within the vials, none of which was ever found at the house or on Handy. The method of dispensing cocaine discovered in the search, tin foil packets, obviously differed from the vials McGill described. Contrast *Commonwealth* v. *James*, ante 490, 495-497 (1991) (evidence that bags of cocaine defendant discarded were indistinguishable in content and packaging from those found in apartment with large cocaine stash warranted inference of connection to that stash). In prior cases, convictions following police surveillance that implicated a defendant in drug distribution transactions have also been based upon evidence of the defendant's actual possession of the drugs or of his occupation of the drug situs. See *Commonwealth* v. *Lee*, 2 Mass. App. Ct. 700, 704-705 (1974); *Commonwealth* v. *Cooke*, 3 Mass. App. Ct. 708 (1975); *Commonwealth* v. *Miles*, 17 Mass. App. Ct. 991, 991-992 (1984). No such additional evidence existed here.

dence to prove that Handy had possession of the cocaine seized by the police on the second floor of the house at 41 Lawrence Street on December 15, 1988. " 'Possession implies "control and power," exclusive or joint . . . , or, in the case of "constructive possession," knowledge coupled with the ability and intention to exercise dominion and control.' 'Proof of possession of a controlled substance may be established by circumstantial evidence, and the inferences that can be drawn therefrom.' 'While presence in an area where contraband is found "alone cannot show the requisite knowledge, power, or intention to exercise control over the [contraband] . . . presence, supplemented by other incriminating evidence, will serve to tip the scale in favor of sufficiency.' " (Citations omitted.) *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 617-618 (1990), *S.C.*, 410 Mass. 1005 (1991).

Since there was no evidence that Handy ever had actual possession of any cocaine, the Commonwealth had to prove his constructive possession of the drugs found on the second floor of the apartment, which required a showing that he "knew of the presence of [the] cocaine and had the ability and intention to exercise dominion and control over it." *Id.* at 618. The Commonwealth failed to make that showing. There was no evidence that Handy had knowledge of or control over the cocaine on the second floor. The sum of the Commonwealth's evidence against him amounted to no more than his presence on the first floor of a house on the second floor of which cocaine was discovered. Presence alone is not sufficient to prove the requisite knowledge and intent to control necessary to establish constructive possession of contraband. *Commonwealth* v. *Garcia*, 409 Mass. 675, 687 (1991). Here there was no supplementary incriminating evidence to tip the scale in favor of sufficiency.

There was no evidence that Handy owned, rented, or stayed in the house or any part of it. See *Commonwealth* v. *Flaherty*, 358 Mass. 817, 818 (1971); *Commonwealth* v. *Lee*, 2 Mass. App. Ct. 700, 704-705 (1974), and cases cited. Contrast *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 410 (1989); *Commonwealth* v. *Nichols*, 4 Mass. App. Ct. 606,

613 (1976); *Commonwealth* v. *Miller*, 17 Mass. App. Ct. at
991 (all relying on fact that defendant rented or lived in
apartment where contraband found).[5] There was no evidence
of personal papers or other effects linking Handy to the
house generally or to the second floor in particular. See *Com-
monwealth* v. *Flaherty*, 358 Mass. at 818; *Commonwealth* v.
*Williams*, 3 Mass. App. Ct. 370, 371-372 (1975). Contrast
*Commonwealth* v. *Lee*, 2 Mass. App. Ct. at 701-702; *Com-
monwealth* v. *Rarick*, 23 Mass. App. Ct. 912 (1986); *Com-
monwealth* v. *James*, *ante* 490, 494 (1991) (all involving per-
sonal property of defendant found in proximity to the seized
contraband). There was no evidence that Handy possessed
large amounts of cash, commonly associated with drug deal-
ings. Contrast *Commonwealth* v. *Brzezinski*, 405 Mass. at
410. Handy made no damaging admissions to the police con-
cerning the cocaine. See *Commonwealth* v. *Brown*, 401
Mass. 745, 748 (1988). Contrast *Commonwealth* v. *Rosa*, 17
Mass. App. Ct. 495, 499 (1984).

Finally, Handy's actions in response to the police raid im-
pressively negated any link to either the house or the cocaine
on the second floor. His abortive flight, which led him to a
barred window in the rear of the house that made his escape
impossible, reflected both an unfamiliarity with the premises
and the absence of protective behavior toward or awareness
of the contraband. Contrast *Commonwealth* v. *Brzezinski*,
405 Mass. at 410 (defendant responded to police entry by
running into closet containing cocaine and drug parapherna-
lia); *Commonwealth* v. *James*, *supra* at 497-498, and cases
cited (defendant ran upstairs and tried to flee into the very

[5]As these authorities hold, a defendant's ownership of or residential sta-
tus at a premises is a relevant inculpatory factor to be considered in deter-
mining whether he can be regarded as being in constructive possession of
contraband found on those premises, since it indicates "more than mere
presence." See *Commonwealth* v. *Arias*, 29 Mass. App. Ct. at 616. The
absence of such evidence, while relevant under the case law, should proba-
bly not be deemed equivalently exculpatory, in light of the mobility of re-
tail drug operations. See, e.g., *Commonwealth* v. *Scalise*, 387 Mass. 413,
416 (1982); *Commonwealth* v. *Chausse*, *post* 956, 957 (1991).

apartment containing the stash of contraband, inferentially to assist in its concealment or destruction).[6]

In short, no incriminating circumstantial evidence supplemented Handy's mere presence. Nothing established a nexus between Handy and the seized cocaine that supports a rational inference that he either knew of the cocaine's existence or could exercise dominion and control over it, or over that portion of the house in which it was found. In these circumstances the trial judge should have allowed Handy's motion for a required finding of not guilty. See *Commonwealth* v. *Flaherty*, 358 Mass. at 818; *Commonwealth* v. *Garcia*, 409 Mass. at 687; *Commonwealth* v. *Williams*, 3 Mass. App. Ct. at 371-372; *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563, 567-569 (1980).

The judgment is reversed, the verdict is set aside, and the case is remanded to the Superior Court for entry of a finding of not guilty.

*So ordered.*

---

[6]Although evidence of a defendant's flight is admissible as some evidence of consciousness of guilt, standing alone it is not an adequate basis for conviction (as the judge properly instructed the jury), "since there are numerous reasons why an innocent person might flee . . . ." *Commonwealth* v. *Toney*, 385 Mass. 575, 585-586 n.6 (1982). It is a particularly insufficient foundation where, as here, the defendant "had at least one other motive" for his action, see *Commonwealth* v. *Fancy*, 349 Mass. 196, 201 (1965), and "where the other evidence is so slight." *Commonwealth* v. *Spina*, 1 Mass. App. Ct. 805, 806 (1973).