## COMMONWEALTH vs. DAVID FIGUEROA.

Worcester. February 4, 1992. - June 5, 1992.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Constitutional Law*, Search and seizure. *Search and Seizure*, Automobile, Arrest, Plain view, Probable cause, Exigent circumstances.

A police inventory search of an automobile, which led to the discovery of a wrapped parcel found to contain heroin, did not exceed the scope permissible under standardized policies set forth in writing; moreover, the officers' observation of the area behind a detached interior wall panel, where the package was found, would have been justified under the plain view doctrine. [748-750]

The circumstances of a police officer's discovery of a partially concealed package during an inventory search of an automobile were sufficient "to warrant a person of reasonable caution in believing" that the package contained contraband, and a passenger's sudden flight after the package was discovered provided exigent circumstances justifying the officer's warrantless seizure of the package. [750-752]

INDICTMENT found and returned in the Superior Court Department on January 17, 1990.

A pretrial motion to suppress evidence was heard by *Herbert F. Travers, Jr.*, J., and the case was tried before *William H. Welch*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Nona E. Walker*, Committee for Public Counsel Services, for the defendant.

*Katherine E. McMahon*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. The defendant, David Figueroa, was convicted by a jury in the Superior Court of trafficking in 38.5

grams of heroin.[1] The heroin was discovered in the defendant's automobile during a roadside inventory search conducted by the Massachusetts State police. Following an evidentiary hearing prior to trial, a judge of the Superior Court denied the defendant's motion to suppress the seized evidence. Following his conviction, the defendant appealed. We transferred the case to this court on our own motion. The defendant argues on appeal that his motion to suppress should have been allowed because the search of his vehicle exceeded the scope of the written inventory policy of the Massachusetts State police and thereby violated his rights under art. 14 of the Massachusetts Declaration of Rights. The defendant also argues that the motion should have been allowed because the heroin was seized from his automobile without a warrant.[2] We affirm.

The following facts are drawn from the findings of the motion judge and from the undisputed evidence in the record. At approximately 5 A.M. on August 1, 1989, Trooper Matthew R. Roy of the Massachusetts State police was monitoring traffic by radar on Route 84 near Sturbridge when he observed a white Datsun automobile bearing Massachusetts registration number 462-PGF, travelling in the eastbound lane at a rate substantially in excess of the speed limit. Trooper Roy activated his cruiser's blue lights, pursued the automobile, and caused it to stop on an overpass above Route 131.

The vehicle was occupied by two men: the driver, Harold Lebron, and a passenger, the defendant David Figueroa. Trooper Roy approached the stopped vehicle and asked Lebron for his driver's license and motor vehicle registration. Lebron produced a driver's license that had expired the previous year. The defendant, who stated that he owned the au-

---

[1] The defendant was also convicted of possession of heroin with intent to distribute. This charge was dismissed as duplicative.

[2] In this appeal, the defendant has not raised any arguments under the Fourth Amendment to the United States Constitution, nor has he raised any arguments under G. L. c. 276, § 1. Thus, we consider the defendant's challenges only under art. 14 of the Massachusetts Declaration of Rights.

tomobile, handed the trooper a motor vehicle registration which matched the license plates on the vehicle but which had been issued to a different automobile.

Trooper Roy returned to his cruiser and conducted a records check of both occupants of the vehicle. The trooper ascertained that neither of the two men held a valid driver's license and that the vehicle was unregistered. He also discovered that four warrants were outstanding for Lebron's arrest. He then radioed for another officer to assist him.

Trooper John E. Hackett responded to Trooper Roy's request. On Trooper Hackett's arrival, Trooper Roy returned to the stopped vehicle, placed Lebron under arrest, and secured him in the cruiser. Meanwhile, Trooper Hackett explained Lebron's arrest to the defendant. Trooper Hackett advised the defendant that it was necessary to tow the defendant's vehicle and that the troopers were required to take an inventory of the vehicle's contents. He further advised the defendant that the troopers would take him to a location where he could obtain a ride home.

After the defendant stepped out from the vehicle, Trooper Hackett commenced the inventory search in the front of the vehicle. During this phase of the search the trooper did not notice anything "of value." The trooper then proceeded to the rear of the vehicle and, from outside of the vehicle, observed that an interior wall panel immediately to the rear of the driver's seat was detached from the wall. The loose panel, which was just below the rear window on the driver's side, created a gap of one to two inches. Trooper Hackett shone his flashlight into this open area and observed a brown paper bag which was wrapped inside a clear plastic or cellophane bag. Based on his training and experience, Trooper Hackett became suspicious that the package contained contraband. He called Trooper Roy to observe what he had located. Trooper Roy, who had been speaking with the defendant, came to the vehicle and shone his flashlight into the open area behind the wall panel. On observing the brown paper bag, Trooper Roy looked toward where the defendant had been standing and discovered that the defendant had fled

down an embankment from the overpass and was several hundred yards away on Route 131. Trooper Hackett abandoned his inventory search, seized the package from behind the wall panel, and began to pursue the defendant. Trooper Hackett searched for the defendant unsuccessfully until approximately 7 A.M.[3] Trooper Hackett returned to the State police barracks, where he opened the package he had seized from the defendant's vehicle. The package contained 500 small packets of white powder which subsequent tests revealed to be 38.5 grams of heroin.

1. *Scope of inventory search.* The defendant's principal argument on appeal is that, by looking into the gap behind the loose wall panel in the defendant's automobile, the troopers exceeded the scope of the Massachusetts State Police Motor Vehicle Inventory Procedure, OPR-26A.[4] That procedure provides in part that "[t]he inventory listing of personal items and valuables will extend to all storage areas and compartments that are accessible to the operator and/or passengers." The defendant argues that the area behind the wall panel could not logically be considered a "storage area" or "compartment" and therefore was not the proper focus of an inventory search. The defendant further argues that, by straying from the inventory policy, the troopers violated his rights under art. 14.

The defendant is correct to the extent he argues that art. 14 requires that an inventory search be conducted pursuant to a standardized policy set forth in writing. See *Commonwealth v. Garcia*, 409 Mass. 675 (1991); *Commonwealth v. Bishop*, 402 Mass. 449 (1988). See also *Commonwealth v.*

---

[3]The defendant was not located that day, but was arrested some time later in Puerto Rico.

[4]The defendant does not dispute that the trooper was justified in stopping the defendant's vehicle because it was travelling in excess of the speed limit. Nor does the defendant dispute that the officer was required to perform an inventory search once he determined it was necessary to impound the vehicle because neither the defendant nor the driver possessed a license and because the vehicle was unregistered. The defendant argues instead that the officer exceeded the scope of the written policy governing inventory searches by the Massachusetts State police.

*Rostad*, 410 Mass. 618 (1991); *Commonwealth* v. *Ford*, 394
Mass. 421 (1985). Such a requirement removes from the in-
dividual police officer the discretion to determine the scope of
an inventory search and thereby minimizes its intrusiveness.
See *Commonwealth* v. *Garcia, supra* at 681. We disagree,
however, with the defendant's argument that, by looking into
the area behind the open wall panel in question, the trooper
in this case exceeded the scope of the applicable inventory
policy. OPR-26A expressly provides that "the inventory list-
ing of personal items and valuables will extend to all storage
areas and compartments that are accessible to the operator
and/or passengers. . . .. This encompasses *all open areas*, in-
cluding the area under the seats, the glove compartment and
other places where property is likely to be held" (emphasis
supplied). We think it clear that the officers stayed within
the confines of this language when looking into the area be-
hind the wall panel because that area was an "open area" at
the time the officers conducted their search. We note that
this is not a situation where the officers physically uncovered
the area in question. Rather, the area was open to their view
as they were proceeding with a lawful inventory search of the
interior of the vehicle.[5] In these circumstances, even if the
area were not expressly encompassed by the policy in ques-
tion, the officers' observation of the area, which came from a
lawful vantage point, would be justified under the plain view
doctrine. See *Commonwealth* v. *Sergienko*, 399 Mass. 291,
294-295 (1987), and cases cited.[6] That the officers employed
a flashlight in making their observation does not change our

---

[5]The motion judge found that "the search was conducted as an inven-
tory search and for no other purpose."

[6]It is important to distinguish between the *observation* of an item in
plain view and the *seizure* of an item in plain view. The observation of an
item in plain view "involves no intrusion into an area in which the defend-
ant has a reasonable expectation of privacy" and does not rise to the level
of a search. *Commonwealth* v. *Sergienko, supra* at 294. See *Horton* v.
*California*, 496 U.S. 128, 133 & n.5 (1990). The seizure of an item in
plain view, however, intrudes upon the owner's possessory interest in that
item and thus implicates constitutional considerations. *Sergienko, supra* at
296. *Horton, supra* at 133 n.5.

analysis. See *Commonwealth* v. *Sergienko, supra* at 295; *Commonwealth* v. *Cavanaugh*, 366 Mass. 277, 281 (1974); *Commonwealth* v. *Oreto*, 20 Mass. App. Ct. 581, 584-585 (1985).

2. *Seizure of the contraband.* The defendant also challenges the warrantless seizure of the bag from behind the wall panel. Our conclusion that the State police inventory policy encompassed the area from which the bag was seized does not resolve this question because the motion judge specifically found that Trooper Hackett had abandoned his inventory search prior to seizing the bag. Thus, because the bag was seized without a warrant, the Commonwealth bore the burden of proving that the seizure was justified by one of the other recognized exceptions to the warrant requirement. See *Commonwealth* v. *Ortiz*, 376 Mass. 349, 353 (1978). In denying the defendant's motion to suppress, the motion judge apparently accepted the Commonwealth's argument that the seizure was justified because the trooper possessed probable cause to believe the package contained contraband[7] and because there were exigent circumstances which made obtaining a warrant impracticable.[8] The undisputed findings of the motion judge support this conclusion.[9]

---

[7]The defendant makes no explicit argument to us that there was no probable cause to seize the bag, but we think it appropriate to address this issue.

[8]The motion judge concluded that the "observations made by Officer Hackett of the package within the wall compartment, its nature and location, were sufficient to lead him to believe that it contained a narcotic substance.

"He had a perfect right thereupon to seize the object; but even if that were not so, in fact the seizure was made by Officer Hackett when it was observed that the defendant Figueroa had fled the scene; and it was then necessary to pursue him. At that point there was every reason to believe that the vehicle might have to be left unattended, and there [were] adequate reasons to open the panel further and seize the object within it and take custody of it."

[9]The Commonwealth has not argued that the seizure of the package was justified under the plain view doctrine. A warrantless seizure is justified under the plain view doctrine only where the incriminating nature of the item is immediately apparent and where the officer has a lawful right of

The motion judge found that, prior to seizing the package in question, Trooper Hackett was apprised of the following facts and circumstances. A brown paper package wrapped in clear cellophane or plastic was partially concealed in a makeshift compartment in the defendant's automobile. Based on his previous experience, including an instance where he had discovered illegal drugs in a similar location during a search of an automobile, Trooper Hackett knew from the nature of the package and its place of concealment that the package contained contraband. After the trooper became suspicious and asked Trooper Roy to observe the package, the defendant suddenly fled the scene. These circumstances were sufficient "to warrant a person of reasonable caution in believing" that the package contained contraband, and thus were sufficient to establish probable cause. *Commonwealth* v. *Gullick*, 386 Mass. 278, 283 (1982). See *Commonwealth* v. *Ortiz, supra* (upon observing approaching police officers, defendant threw packet into automobile and retreated from scene; officers recognized the packet as being of the type used to conceal heroin).

We are also persuaded that the situation facing the trooper at the time he seized the package was of such an exigent nature that it was impracticable for him to get a warrant. See *Commonwealth* v. *Cast*, 407 Mass. 891, 904 (1990). In arguing to the contrary, the defendant contends that, by the time the troopers seized the package, they had already taken custody of his vehicle. Thus, the defendant contends, the factors which traditionally support a finding of exigency, such as the inherent mobility of an automobile or the possibility that its contents would never be found again if a warrant was first obtained were not present. See *Chambers* v. *Maroney*, 399 U.S. 42, 51 (1970). The motion judge found, however, that, once it became necessary for Trooper Hackett to pursue the defendant, the trooper "had every reason to believe that the vehicle might have to be left unattended." We cannot say

---

access to the item. See *Commonwealth* v. *Cefalo*, 381 Mass. 319, 330 (1980). See also *Horton* v. *California, supra* at 136-137.

that this finding was clearly erroneous.[10] See *Commonwealth v. Yesilciman*, 406 Mass. 736, 743 (1990). In light of this fact, the situation facing the trooper at the time he seized the package was such that he faced the choice of forgoing his pursuit of the defendant in order to obtain a warrant or leaving the contraband unattended in an open vehicle on a public highway. If the trooper chose the latter option, the possibility existed that the defendant, a person alerted by the defendant, or a passerby could have returned to the vehicle and moved the vehicle or the contraband prior to the trooper's return. In these circumstances, we conclude the officer acted reasonably in seizing the package. See *Commonwealth v. Ortiz, supra* at 355-358 (exigent circumstances existed where contraband was located in automobile on public street even though defendant had been apprehended; possibility existed that others might move the vehicle or the contraband in the officers' absence). Accordingly, the judge properly denied the defendant's motion to suppress.[11]

3. *Conclusion.* The order denying the motion to suppress is affirmed. The judgment of conviction is affirmed.

*So ordered.*

---

[10]The record reflects that, although Trooper Hackett had called a tow truck and the Sturbridge police to the scene, neither had yet arrived. Further, although Trooper Roy was present at the scene, he was occupied with the driver, Lebron, whom he had taken into custody.

[11]On appeal the defendant seeks to challenge the opening of the closed package containing the heroin. The defendant did not raise this argument before the motion judge. We will not ordinarily consider an argument raised for the first time on appeal. Thus we do not reach it here. See *Commonwealth v. Garcia*, 409 Mass. 675, 678-679 (1991). We have previously left open the question whether an inventory search of a closed container that is conducted pursuant to a standardized written policy is permissible under art. 14. See *id.* at 685 n.1; *Commonwealth v. Bishop*, 402 Mass. 449, 451 n.1 (1988). See also *Commonwealth v. Rostad*, 410 Mass. 618, 622-623 (1991).