COMMONWEALTH *vs.* ROBERT ALDRICH.

Middlesex.    September 9, 1986. — November 14, 1986.

Present: GREANEY, C.J., CUTTER, & DREBEN, JJ.

*Search and Seizure,* Warrant, Return, Inventory, Probable cause, Auto-
mobile, Threshold police inquiry. *Constitutional Law,* Search and sei-
zure. *Practice, Criminal,* Assistance of counsel, Defendant pro se.
*Breaking and Entering. Burglarious Implements.*

The fact that the return of a search warrant was signed by an officer who had
    not been present during the search, although the printed language of the
    return recited that the search had been conducted by him, did not require
    that items seized by police in a search of an automobile pursuant to the
    warrant be suppressed as evidence at a criminal trial, where there was
    no showing that the search was conducted improperly or that the inventory
    was not accurate and where it was not established that the defendant
    had been prejudiced in any significant respect by the inaccurate return.
    [161-163]
An officer in a police cruiser had sufficient basis to stop an automobile which
    proceeded from a side road to another road too fast and in an erratic
    manner, nearly colliding with the cruiser. [163-164]
Evidence at a criminal trial, including evidence that the defendant had been
    in possession of stolen items at a time shortly after the theft was probably
    committed and within a very short distance from the house from which
    the items had been removed, warranted the jury in finding the defendant
    guilty of breaking and entering and of larceny. [164-165]
At the trial of an indictment for possession of burglarious implements, any
    error in the judge's instructions to the jury that the prosecution must
    prove beyond a reasonable doubt that the tools were adapted and designed
    for the purpose of stealing "or committing any other crime" was harmless,
    where the evidence did not suggest that any crime other than stealing
    had been carried out or intended. [165]

INDICTMENTS found and returned in the Superior Court De-
partment on January 25, 1984.

Pretrial motions were heard by *Edith W. Fine,* J., *John J.
Irwin, Jr.,* J., and *Andrew G. Meyer,* J. The cases were tried
before *Robert A. Barton,* J.

*Brownlow M. Speer,* Committee for Public Counsel Services, for the defendant.

*Joseph P. Musacchio,* Assistant District Attorney, for the Commonwealth.

CUTTER, J. Robert Aldrich appeals from convictions of (a) breaking and entering a dwelling in Newton in the daytime with intent to commit larceny and larceny and (b) possession of burglarious implements. We affirm the judgments.

On November 21, 1983, about 6:40 A.M., Officer Kevin Cupoli of the Newton police was sent to 244 Woodland Road, Newton, in response to a telephone report that someone had broken into that house. Telephone and cable television wires had been cut near at least one house in the area. While on the way, Officer Cupoli saw the operator of a Cadillac Eldorado drive the automobile out fast and in erratic fashion (on a wet highway covered with leaves) from Windermere Road onto Woodland Road, almost colliding with the officer's police cruiser and forcing its driver to reduce speed and to swerve.

Officer Cupoli stopped the driver on Woodland Road in front of the next house to No. 244 and ascertained that the Cadillac was unregistered and that a registration produced in the name of "Robert Aldrich" was for a different vehicle. The driver said he was "Paul Aldrich," but he was unable to produce an operator's license. He also stated that "his brother had just bought the car and . . . hadn't had time to register it." Further checks of the operator's license by radio produced no results. The driver gave various explanations for his being in the area where he was stopped, including that he had dropped his "girlfriend" off in Cambridge, "had got lost on the Pike, and then . . . got a flat tire."

Officer Stephen Walsh (also sent to 244 Woodland Road) soon joined Officer Cupoli. He testified at trial that he "pat-frisked" Aldrich at the "rear of the" Cadillac and "made a quick search of the vehicle." Because Aldrich had told "Officer Cupoli that he had just changed a flat tire," Officer Walsh opened the trunk, where he saw only a tire covered with mud, "[s]everal rags and a wheel cover." He felt the tire, observed that it was flat, and closed the trunk again. Inside the vehicle

he saw tools, pliers, and screw drivers in the glove compartment, but he at trial recalled none elsewhere. Officer Walsh (after remaining with Officer Cupoli for about five to ten minutes) then went off to 244 Woodland Road on his original assignment.

Officer Cupoli remained with Aldrich and the Cadillac. He issued Aldrich a citation for the "motor vehicle violations [for failure to obey a stop sign,[1] driving an unregistered vehicle, and having the wrong plates attached] and . . . called for a tow for the . . . [unregistered] vehicle." He remained with the Cadillac until the tow truck arrived and advised Aldrich how he could "get to the . . . street car from that area." Aldrich was allowed to leave, and Officer Cupoli proceeded to 244 Woodland Road.

At 244 Woodland Road, the owner showed Officer Walsh (a) the dining room where drawers were pulled out and a window was open, and (b) "what appeared to be jimmy marks on the window sill," about "an eighth to a quarter of an inch in width indentations in the wood" which could have been made by a screwdriver. From the owner Officer Walsh ascertained that particular silver items were missing. Officer Cupoli participated in the investigation there after he joined Officer Walsh.

That afternoon, a warrant to search the Cadillac for silver missing from 244 Woodland Road was obtained on an affidavit by Detective Manley J. Kiley. It was executed during the afternoon. Late that afternoon Officer Walsh went to Newton police headquarters and, after informing two brother officers that he did not recognize a man with whom they were talking outside the building (later shown to be Paul Aldrich), he went inside and observed "in the holding cell" Robert Aldrich, whom

---

[1] At hearings before motion judge no. 1 and motion judge no. 2, Officer Walsh had testified that Officer Cupoli had reported seeing Aldrich driving the Cadillac across a front lawn nearby before he stopped him. Officer Cupoli had testified before motion judge no. 1 that the lawn owner had approached him from Windermere Road, after he had stopped Aldrich, and said, "Make sure you give him a ticket for going over my front lawn." There was no testimony at trial about this aspect of the stop.

he then recognized as the driver stopped that morning. Aldrich was wearing the same clothing as when stopped.

A short time earlier that afternoon, Detective Joseph Donahue had seen a man standing at the counter in the police station. The man told the detective "he wanted to get his car that was towed that morning" and "said his name was 'Paul Aldrich.'" The detective replied "No, you're Robert Aldrich." Aldrich was placed under arrest for burglary, informed of his Miranda rights, and searched. Upon him was found the citation issued to him that morning by Officer Cupoli.

Pretrial motions were heard before three separate Superior Court judges in this case, which was tried before a fourth Superior Court judge and a jury. At least one motion hearing was complicated to some degree by Aldrich's insistence on acting pro se, with some assistance from "standby" counsel. These motions are summarized and discussed in the appendix to this opinion.

On appeal, Aldrich raises four issues. Further pertinent facts are stated in connection with the discussion below of these issues.

1. At the hearing on December 10 and 11, 1984 (before motion judge no. 2, see Appendix, *infra*) on Aldrich's motion to dismiss the indictments, it was shown that Detective Kiley was not himself present at the search of the Cadillac on the afternoon of November 21, 1983. The return, filed after the search pursuant to the warrant, was signed by Detective Kiley on the back of the printed form of warrant. Relevant portions of that return are set out in the margin.[2] The warrant itself was

---

[2] The return reads in part (the *printed* language of the return is italicized): *"I received this search warrant* November, 21, *1983, and have executed it as follows*: On November *1921* [*sic*] *at 6 o'clock* P.M. *I searched the premises described in the warrant . . . . The following is an inventory of the property taken pursuant to the warrant*: One large screwdriver and a pair of wirecutters located on the floor by the front seat. A set of eight screwdrivers located in the glove compartment. One large flashlight located on the front seat. One sterling silver pedestal candy dish and five sterling silver bread and butter plates in a cloth silverware bag located on the right hand side in the trunk, the property of Eugene B. Galton, 244 Woodland Road, Newton. *This inventory was made in the presence of* Lt. James V.

addressed to (among other officers) "any constable or police officer of any city." Detective Kiley admitted before motion judge no. 2 that he signed the return "solely on the information . . . given [to him] by other officers" and because "convinced . . . that those statements were true." He himself saw the objects seized the morning after the search. There was somewhat conflicting evidence concerning precisely when, on the afternoon of November 21, the search of the automobile took place.

Robert Aldrich now contends that the inaccuracies in the return required suppression of the items seized in the search of the Cadillac.[3] General Laws c. 276, § 3A, as appearing in St. 1964, c. 557, § 5, provides (so far as here relevant): "Every officer to whom a warrant to search is issued shall return the same to the court by which it was issued as soon as it has been served and in any event not later than seven days from the date of issuance thereof, with a return of his doings thereon . . . ." Under this section the officer who serves the warrant may (and ordinarily should) make the return. *Commonwealth v. Ness,* 355 Mass. 257, 259 (1969). "The 'overwhelming weight of authority,' however, is to the effect that required warrant return procedures are *ministerial,* and failure to comply therewith is not ground for voiding an otherwise valid search" (emphasis supplied). *Commonwealth v. Cromer,* 365 Mass. 519, 521 n.3 (1974). See *Cady v. Dombrowski,* 413 U.S. 433, 449 (1973); *United States v. Dudek,* 530 F.2d 684, 686-691 (6th Cir. 1976); *United States v. Dauphinee,* 538 F.2d 1, 2-3 (1st Cir. 1976). In the present case, the warrant was executed within much less than twenty-four hours of its issuance, and Aldrich has made no demonstration of any prejudice to him in any way caused by the seasonable return (see the *Cromer* case at 525), which, of course, took place after the search had

---

Cox *and* Det. John S. Cappadona. *I swear that this inventory is a true and detailed account of all the property taken by me on the warrant.* /s/ Manley J. Kiley. *Subscribed and sworn to before me this* 25 *day of* Nov., *1983.* /s/ Henry H. Shultz, *Clerk.*"

[3] He also argues that the search may have been conducted before the warrant was obtained. As to this, see discussion in Appendix, *infra.*

been made. The return thus had (and could have had) no effect upon what articles in fact had been found in this Cadillac or upon Aldrich's ability to argue that the search was without probable cause.

The actions of Detective Kiley and the Newton police department with respect to the return on the search warrant were improper and at least seriously careless. An officer of the department who actually had been present at the search should have made the return, or Detective Kiley should have changed appropriately the printed form of return (see note 2, *supra*) on the back of the search warrant to disclose that it was made by him on the basis of reliable hearsay reports to him by other officers and prompt inspection by him of the seized articles. The inventory filed (not shown in this case to have been incomplete) constitutes an important purpose of any return. See *Commonwealth* v. *Ierardi*, 17 Mass. App. Ct. 297, 302 (1983), in which the trial judge's exclusion from evidence of items, taken in a search of a vehicle but *omitted* from the inventory in the return, was affirmed, but the denial of a motion to suppress items *listed* in the return was also affirmed. See also 2 LaFave, Search and Seizure § 4.12, especially at 187 (1978 & Supp. 1986); Smith, Criminal Practice and Procedure §§ 236-237 (1983 & Supp. 1986).

We perceive in c. 276, § 3A, no legislative requirement that, in the circumstances of this case, seized items must be excluded from evidence, where there is no showing that the search was conducted improperly or that the inventory was inaccurate, and the alleged impropriety is essentially that the wrong officer signed the return (or that the officer who signed the return should have modified it). Application of an exclusionary rule has been found "to be inherent in the purpose of . . . [some] statute[s] which" the Commonwealth may have violated, but "only in statutes closely associated with constitutional rights . . . grounded in fundamental fairness." *Commonwealth* v. *Lyons,* 397 Mass. 644, 647 (1986). Any requirement in § 3A of an accurate return "is not closely affiliated with any constitutional guarantee" (*id.* at 648) and can have no practical effect upon a warrant issued on an affidavit clearly

establishing probable cause. See the situation considered in *Commonwealth* v. *Lyons,* 397 Mass. at 646-648. That case cites *Commonwealth* v. *Upton,* 394 Mass. 363, 366-369 (1985), as an example of a case where an exclusionary rule was implicit in the purpose of a statute.

The *Upton* case was a case in which the Commonwealth failed "to set forth in an affidavit required by [c. 276,] § 2B, an adequate showing of probable cause." *Commonwealth* v. *Sheppard,* 394 Mass. 381, 389 (1985). Similarly, in *Commonwealth* v. *Monosson,* 351 Mass. 327, 330 (1966), the requirement of c. 276, § 2B, that probable cause be set forth *in a writing* precluded showing by sworn oral evidence the existence of an aspect of probable cause not revealed by affidavit and justified implying an exclusionary rule based on § 2B. In the present case, as already noted, it has not been established that the inaccurate return has caused prejudice to Aldrich in any significant respect. In the circumstances, the return should be afforded the same commonsense type of appraisal given to the warrant and supporting affidavit considered in *Commonwealth* v. *Truax,* 397 Mass. 174, 177-182 (1986).

2. There was ample basis in the evidence for Officer Cupoli's original stop of Aldrich when Aldrich, on a late November morning, drove out from a side road to another road too fast and in an erratic manner and nearly collided with the police cruiser. Although it was later stipulated that there was in fact no "stop" sign on Windermere Road where it joined Woodland Road, it was proper (if, indeed, not his duty) for Officer Cupoli to "pull over" Aldrich when he observed Aldrich's inherently dangerous or negligent conduct. See *Commonwealth* v. *Cavanaugh,* 366 Mass. 277, 278, 281-282 (1974). See and compare *Commonwealth* v. *Bacon,* 381 Mass. 642, 643-644 (1980). See also *Commonwealth* v. *Markou,* 391 Mass. 27, 30-31 (1984). Compare *Commonwealth* v. *Podgurski,* 386 Mass. 385, 386-390 (1982), cert. denied, 459 U.S. 1222 (1983); *Commonwealth* v. *O'Connor,* 21 Mass. App. Ct. 404, 405-406 (1986), in each of which no illegal activity had been observed to justify any inspection of the vehicle. We hold that motion judge no. 2 correctly concluded that the stop

was proper. Once Officer Cupoli discovered that the Cadillac was not registered, it was reasonable for him to have it towed.[4]

In view of the strong evidence concerning Aldrich's motor vehicle violations, we perceive no reason why it was the duty of Aldrich's original counsel to contest the adequacy of the original stop by Officer Cupoli, given the slight likelihood of success. *Commonwealth* v. *Gaeten,* 15 Mass. App. Ct. 524, 533 (1983), and cases cited. His failure to do so was not ineffective assistance of counsel.

3. The trial judge properly denied Aldrich's motion for a required finding of not guilty. On the evidence before the jury, viewed in its aspect most favorable to the Commonwealth, see *Commonwealth* v. *Clary,* 388 Mass. 583, 588-589 (1983), rational finders of the facts could conclude that Aldrich was guilty of the breaking and entry and theft beyond a reasonable doubt. The stopping and towing of the Cadillac (later found on a proper search under a warrant to contain the stolen items) took place at a time shortly after the offense was probably committed and within a very short distance of the house which

---

[4] Aldrich's present general objections to the morning stop of the Cadillac appear to rest principally on the fact that on Windermere Road at its junction with Woodland Road there was no stop sign, so that Aldrich had not gone through a stop sign without stopping as charged in the citation to him. In Aldrich's brief no specific contention is now made based on any *details* of the initial stop or of the cursory check of the Cadillac made by Officer Walsh, obviously to check Aldrich's claim that he had just changed a tire (and perhaps also as part of a weapons search). See text preceding note 1, *supra.* The objections in Aldrich's brief to the stop are expressed as a part of contentions that Aldrich's original counsel (a) should have discovered the absence of any stop sign, and (b) should have made his original motion to suppress on a broader basis. Officer Cupoli, when he had the Cadillac towed, had a choice of (a) arresting Aldrich for operating without an operator's license in his possession and for an observed operation of an unregistered motor vehicle (G. L. c. 90, § 21, prior to its revision by St. 1985, c. 794, § 1) as well as for entering Woodland Road from a side street too fast, or (b) of issuing a citation to Aldrich and letting him go. Motion judge no. 2, after hearing the evidence, indeed, expressed some surprise that Aldrich was let go in the circumstances. If an arrest then had been made, a broader search of the Cadillac (as an incident of that arrest) might have been permissible. See Smith, Criminal Practice and Procedure §§ 238-248, 266-267 (1983 & Supp. 1986).

had been entered. The jury could infer from all the evidence that Aldrich was the thief.

4. The trial judge, over Aldrich's counsel's objection, instructed (following the language of G. L. c. 266, § 49) that the prosecution "must prove beyond a reasonable doubt that . . . [Aldrich] knew that the tools," i.e., the screwdrivers and other hand tools found in the Cadillac, "were adapted and designed for the purpose of stealing *or committing any other crime*" (emphasis supplied) and that Aldrich "had the specific intent to use these tools for" this purpose. We need not decide whether this part of the charge was too broad in view of the indictment (which was for possession of tools intended for the purpose of stealing from a building). The evidence did not suggest any other crime than stealing had been carried out or intended. The use of the italicized language, if error, was harmless. In the circumstances, it could not have misled the jury or improperly have contributed to a guilty verdict. See *Commonwealth* v. *Hanger*, 377 Mass. 503, 511 (1979); *Commonwealth* v. *Clark*, 20 Mass. App. Ct. 392, 394-395 (1985).

*Judgments affirmed.*

APPENDIX.

Summary and Discussion of Pretrial Motions by
or in Behalf of Aldrich

After a hearing on June 7, 1984, motion judge no. 1 denied a motion to suppress all physical evidence seized from the Cadillac. She found (1) that the physical items had been seized pursuant to a search warrant, and (2) that the affidavit supporting the application for the warrant revealed probable cause for the search. The affidavit was prepared on the same day that Aldrich had been stopped on Woodland Road and disclosed in summary form many of the circumstances set forth above in this opinion. In addition, the affidavit stated that one house near 244 Woodland Road had been entered, and the telephone wires to another had been cut, prior to 6 A.M. on November 21, 1983, and that the owner of 244 Woodland Road had heard noises about "6 A.M. but did not investigate." The affidavit also referred to prior convictions of, and charges against, Aldrich for breaking and entering. Attached to the affidavit was an FBI record concerning him.

This attachment was not furnished to us nor is it set out in the record appendix.

Inaccuracies in the return of the warrant were revealed first in a hearing before motion judge no. 2 on December 10 and 11, 1984, on Aldrich's pro se motion to dismiss. That judge's memorandum of decision was not filed until April 8, 1985, but he did indicate on December 11 to Aldrich (and his standby counsel) that, although then he would not allow amendment of the motion to dismiss before him to make it a motion to suppress, a new motion to suppress could be filed. No such new motion was in fact filed until Aldrich, pro se, filed a motion on May 31, 1985, which was denied by motion judge no. 3 on June 10, 1985.

The transcript of the hearing before motion judge no. 2, although requested on April 22, 1985, apparently was not received until June, 1985. At a hearing before motion judge no. 3 on June 10, 1985, various motions were considered, including the motion to suppress filed pro se by Aldrich on May 31, 1985, which was denied, as already stated. On that day also, standby counsel was appointed as Aldrich's counsel and the case then was assigned for trial on June 25 (later postponed for reasons not apparent on this record). On June 24, a new motion to suppress was presented by Aldrich's new counsel and was denied on June 25 (without an evidentiary hearing) by motion judge no. 3. Trial in fact started on July 23, 1985, and, on that day, the trial judge heard and denied ("exercising . . . [his] discretion") an additional motion to suppress as an inappropriate attempt to review the action of motion judge no. 3 on June 10, 1985.

Doubtless, because of testimony before the grand jury by Officer Robert Fitzpatrick of the Newton police that the search warrant was executed "after lunch," which he estimated as 1 P.M., Aldrich was trying to establish that some search (other than the quick check on the highway when Aldrich was stopped) of the towed Cadillac was made before the search warrant was issued. There was no evidence of any premature search under the warrant from any other source and Officer Fitzpatrick himself testified (without objection) at trial that the search was pursuant to a warrant and was "[l]ate in the afternoon, three or four o'clock."

On this confused history of successive (and perhaps dilatory) pretrial motions, some parts of which were prepared or argued by Aldrich pro se, we conclude that motion judge no. 2 on December 11, 1984, reasonably declined (in the presence of Aldrich and his standby counsel) to permit Aldrich to amend his then pending motion to dismiss so as to make it a motion to suppress, while then giving leave to file a new motion. No such motion was filed until May 31, 1985, which motion judge no. 3 reasonably could have regarded as filed unreasonably late when trial was thought to be impending in a few days. The trial judge dealing (on the first day of trial) with the motions heard that day properly could decline then to reconsider the decision of motion judge no. 3.

It is implicit in *Faretta* v. *California,* 422 U.S. 806, 834-836 & n.46, and see n.2 at 808 (1975), that a defendant proceeding pro se must observe all the "ground rules" of professional representation, including the necessity of proceeding with pretrial motions seasonably. See *McKaskle* v. *Wiggins,* 465 U.S. 168, 184 (1984); *Commonwealth* v. *Tuitt,* 393 Mass. 801, 803-808 (1985); Mass.R.Crim.P. 13, 378 Mass. 871 (1979). See also *Commonwealth* v. *Brown,* 378 Mass. 165, 176 (1979); *International Fid. Ins. Co.* v. *Wilson,* 387 Mass. 841, 847 (1983); *Kellermann* v. *Kellermann,* 390 Mass. 1007, 1008 (1984).