COMMONWEALTH *vs.* DANA BAPTISTE.

No. 04-P-581.

Bristol. May 5, 2005. - February 6, 2006.

Present: ARMSTRONG, C.J., PERRETTA, & GREEN, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Automobile, Inventory, Probable cause.

A Superior Court judge erred in allowing the criminal defendant's motion to suppress evidence of a controlled substance found by a State trooper in the defendant's car after he properly had been stopped for speeding, where under the circumstances, the trooper was required by a written State police policy to conduct an inventory search of the car, including any place where property was likely to be kept, such as the console where the controlled substance was discovered [514-519]; moreover, even assuming that the trooper's attempt to release a cup holder from the console and his use of a flashlight to look beneath it exceeded the limits of an otherwise valid inventory search, the search was proper as a warrantless search based on probable cause, where the trooper did not attempt to look beneath the cup holder until after he had entered the vehicle, lifted up the console armrest for purposes of conducting the mandated inventory search, and saw white powder spill from the console onto the seat and floor of the car [519-520].

INDICTMENT found and returned in the Superior Court Department on October 10, 2002.

A pretrial motion to suppress evidence was heard by *Robert J. Kane,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Roderick L. Ireland,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Kevin Connelly,* Assistant District Attorney, for the Commonwealth.

*Robert M. Xifaras* for the defendant.

PERRETTA, J. After the defendant was indicted for trafficking in cocaine, he moved to suppress as evidence the drugs found

in his car by the State police after he was stopped for speeding. The Commonwealth contended that the drugs were found as the result of an inventory search. Based on the evidence presented at the hearing on the defendant's motion, the judge concluded that the drugs were discovered in the course of neither a valid inventory search nor a search based on probable cause. On the Commonwealth's appeal, see Mass.R.Crim.P. 15(b)(2), as appearing in 422 Mass. 1501 (1996), we conclude that the seizure was justified on two bases: (1) the written policy of the State police concerning inventory searches; and (2) probable cause to search beyond the limits of the inventory search. We reverse the order allowing the defendant's motion to suppress.

1. *The facts.* Based on the evidence presented at the hearing on the defendant's motion, the judge found the facts to be as follows. On July 26, 2002, at about 3:00 A.M., State Trooper Anthony Pagliaroni was parked in his cruiser off Route 195 in Swansea. When he saw a vehicle approaching at a high rate of speed, he activated his radar device and determined that the vehicle, a blue Cadillac, was traveling at about eighty-seven miles per hour in an area where the posted speed limit was sixty-five miles per hour. Pagliaroni then activated the cruiser's flashing blue lights, and the driver of the Cadillac slowed down and pulled over to the side of the road with Pagliaroni behind him. With both vehicles now stopped, Pagliaroni walked to the driver's side of the Cadillac. The driver of the car, the defendant, had rolled down his window. There was another person sitting in the front passenger seat of the car.

Pagliaroni could see into the car while speaking with the defendant and asking him for his license and registration. He saw what appeared to be white powder or ash on the vehicle's center console, which also served as an armrest. Pagliaroni also asked the passenger for his name. During this short conversation with the defendant and the passenger and while the defendant was producing his license and registration, Pagliaroni asked the occupants where they had come from and was told "P.C.," that is, Providence College.

Taking the defendant's license and registration back to his cruiser, Pagliaroni requested "checks" on the defendant and his passenger. He learned that although there was no problem with

the registration and ownership of the car, the defendant's license to drive had been suspended, and there was an outstanding default warrant against the defendant from the Uxbridge Division of the District Court Department. After learning that the defendant was unable to drive the car, Pagliaroni also learned that the passenger's license to drive had been suspended.

Returning to the defendant's car, Pagliaroni asked the defendant to step outside the vehicle. As the defendant did so, Pagliaroni had a better view of the substance on the center console.[1] He arrested the defendant on the outstanding warrant, handcuffed him, and placed him in the back of the cruiser. The passenger accepted the offer of a ride off the highway by another State police officer who had arrived at the scene.

Pagliaroni then arranged for the vehicle to be towed. While awaiting the arrival of the tow truck, he entered the vehicle to conduct an inventory search. In the course of that search, he examined the center console and saw that the top of the console served as an armrest, which could be lifted open by a latch. The armrest opened to the console, which was a compartment for the storage of articles of the size and kind that could be held in a glove compartment. There was a double cup holder in the compartment that could be released by pushing a button. When Pagliaroni lifted the armrest, a white powder like what he had seen on top of the armrest fell out from inside the armrest and onto the seat and floor of the car.

Having determined that the powder was coming from within the console, Pagliaroni pressed the button to release the cup holder. However, the cup holder was jammed and could only be released half-way. Pagliaroni then used a flashlight to look beneath the double cup holder. He saw white powder contained in a clear plastic bag tied in a knot. The bag was on the driver's side of the cup holder. When Pagliaroni tried to retrieve the bag from the compartment, more white powder fell out of a hole in the bag and onto the seat and floor of the car. He then returned

---

[1]The judge found that it was at this point that Pagliaroni determined that the powder was a controlled substance. The Commonwealth argues that this finding is unsupported by the evidence and, therefore, clearly erroneous. See note 3, *infra*. Because Pagliaroni's subjective impressions at that time are irrelevant to our analysis, see part 2 of this opinion, *infra*, we need not consider the Commonwealth's challenge to that finding.

to his cruiser, advised the defendant of his Miranda rights, and collected and seized the powder. The towing company arrived and took the car to the State police barracks for purposes of impoundment.

After Pagliaroni arrested the defendant and impounded the vehicle, he filled out two forms, a prisoner property inventory and a vehicle inventory report. Neither report mentioned the bag of white powder.

The judge held that a search for evidence had taken place based on Pagliaroni's observation of the white powder at the time he asked the defendant to step out of the vehicle. He ruled that the absence of details in Pagliaroni's testimony and the documentary evidence about the sequence and results of an inventory of the vehicle's interior, glove compartment, or trunk "impeache[d] the claim that an inventory search occurred." Because Pagliaroni testified that he did not know whether the substance he first saw on the center armrest was ash or white powder and failed to testify as to "what experience and particularized observations caused him to conclude that the white powder constituted cocaine," the judge also concluded that Pagliaroni's search of the vehicle was not supported by probable cause.

2. *Discussion.* "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004), quoting from *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002).[2] See *Commonwealth* v. *Rogers*, 444 Mass. 234, 235 n.2 (2005) ("Although the judge's findings

[2]See, e.g., *Commonwealth* v. *Evans*, 436 Mass. 369, 372 (2002) (" 'In reviewing the denial of a motion to suppress, we accept the motion judge's subsidiary findings of fact absent clear error.' *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), and cases cited. A judge's legal conclusion, however, 'is a matter for review . . . particularly where the conclusion is of constitutional dimensions.' *Commonwealth* v. *Jones*, 375 Mass. 349, 354 (1978)"). See also *Commonwealth* v. *Cruz*, 373 Mass. 676, 682 n.2 (1977), quoting from *Commonwealth* v. *Mahnke*, 368 Mass. 662, 666-667 (1975), cert. denied, 425 U.S. 959 (1976) ("In reviewing the record on this issue '[w]e accept, as we must, the trial judge's resolution of conflicting testimony . . . , and will not disturb his subsidiary findings if they are warranted by the evidence . . . . However, ultimate findings and conclusions of law,

are 'binding in the absence of clear error,' we may reexamine his conclusions of law"). We are also required to conduct an independent review of the judge's application of constitutional principles to the facts found. See *Commonwealth* v. *Mello*, 420 Mass. 375, 381 n.8 (1995); *Commonwealth* v. *Eckert*, 431 Mass. 591, 593 (2000); *Commonwealth* v. *Wilson*, 441 Mass. 390, 393 (2004).

It appears from the judge's memorandum of decision that he accepted Pagliaroni's undisputed testimony that the defendant was driving at an excessive rate of speed, that there was an outstanding warrant for his arrest, and that the passenger's license to drive had been suspended. On those facts there can be no question about Pagliaroni's actions in stopping the car and arranging for its tow from the highway. See *Commonwealth* v. *Garcia*, 409 Mass. 675, 678 (1991) (propriety of impoundment of vehicle is threshold issue in determining lawfulness of inventory search).

What is disputed is whether Pagliaroni's search of the vehicle before it was towed was an inventory search or an investigatory search. As stated in *Commonwealth* v. *Alvarado*, 420 Mass. 542, 553 (1995):

> "Inventory searches are intended to be noninvestigatory and are for the purpose of protecting property which may be within the vehicle. See *Commonwealth* v. *Caceres*, 413 Mass. 749, 754-755 (1992). . . . [U]nder art. 14 [of the Massachusetts Declaration of Rights], inventory searches of automobiles must be conducted pursuant to standard police procedures, . . . [which] must be in writing. *Commonwealth* v. *Bishop*, 402 Mass. 449, 451 (1988)."

See *Colorado* v. *Bertine*, 479 U.S. 367, 376 (1987) (Blackmun, J., concurring); *Commonwealth* v. *Rostad*, 410 Mass. 618, 622 (1991). The purpose for requiring written procedures by which inventory searches are to be conducted is to limit an officer's discretion to "search at will, and so lessen the possibility that police will use inventory procedures as investigative searches." *Commonwealth* v. *Garcia*, 409 Mass. at 681.

particularly those of constitutional dimensions, are open for our independent review in this appeal"); *Commonwealth* v. *Barros*, 435 Mass. 171, 174 n.5 (2001).

The distinction between an inventory search and an investigatory search is found in the objective of each. The objective of an investigatory search is to gather evidence, whereas an inventory search is conducted for the purposes of "safeguarding the car or its contents, protecting the police against unfounded charges of misappropriation, protecting the public against the possibility that the car might contain weapons or other dangerous instrumentalities that might fall into the hands of vandals, or a combination of such reasons." *Commonwealth* v. *Muckle,* 61 Mass. App. Ct. 678, 682-683 (2004). See *Commonwealth* v. *Benoit,* 382 Mass. 210, 219 (1981), *S.C.,* 389 Mass. 411 (1983) ("If a warrantless search is to be recognized as a lawful inventory search, there must be at least a showing that it was conducted for some legitimate police purpose other than a search for evidence").

A general order of the State police, entitled "Towing," authorizes officers "to remove, or cause to be removed, any vehicle found upon a road/state highway when . . . [t]he operator of the vehicle is physically arrested and the vehicle would be left unattended." Department of State Police, General Order TRF-09 (Feb., 1996) (General Order TRF-09). Another general order, entitled "Vehicle Inventory," provides that a "detailed inventory *shall be made* whenever a vehicle is ordered towed, removed, or impounded . . . [p]ursuant to a lawful arrest when the vehicle would be left unattended" (emphasis supplied). Department of State Police, General Order TRF-10 (Jan., 1998) (General Order TRF-10). That general order also delineates the procedures to be followed in conducting the inventory search:

> "The standard inventory procedure consists of a detailed inspection of the interior and exterior of the vehicle for damaged and missing parts, as well as to locate and record the contents of the vehicle. The following units should be inventoried:
>
> "The interior of the vehicle;
>
> "The glove compartment and trunk (unless they are locked and there is no key available); and
>
> "The exterior of the vehicle for missing or damaged parts.

"The inventory listing of personal items and valuables will extend to all storage areas and compartments that are accessible to the operator or occupants. This encompasses:

"All open areas, including the floor areas, the surfaces of the instrument panel and rear deck above the rear passenger seats, the open area under the seats, the glove compartment and trunk, and other places where property is likely to be kept.

"All closed but unlocked containers should be opened, and each article inventoried individually.

"Locked containers should be inventoried as a single unit.

"If an owner and/or operator requests to remove or entrust their possessions to another person without it impeding the towing or impoundment process, such request may be granted unless the officer has probable cause to seize the items."

*Id.* Because the defendant had been placed under arrest and the passenger was unable to drive, Pagliaroni was required by General Order TRF-09 to have the car towed and to conduct an inventory search in accordance with General Order TRF-10 prior to the towing.

Even accepting the judge's inference or ultimate conclusion that Pagliaroni commenced the search of the vehicle while having some degree of an unfounded suspicion regarding the substance he had earlier observed on the center console, his subjective beliefs would not render the inventory search impermissible.[3] See *Commonwealth* v. *Garcia,* 409 Mass. at 679, quoting from *Commonwealth* v. *Matchett,* 386 Mass. 492, 510 (1982) ("fact that the searching officer may have harbored a suspicion that evidence of criminal activity might be

---

[3]Pagliaroni testified:

"I observed it, but at that time [before the defendant exited the car] I wasn't specifically under the impression that it was a controlled substance. . . . I had a more clear view of it as he exited the vehicle. There was less distraction. . . . In my opinion, the first time that I believed it could have been a controlled substance was when I was in the vehicle performing the motor vehicle inventory."

uncovered as a result of the search should not vitiate his obligation to conduct the inventory"). Moreover, any defect in the vehicle inventory report or the prisoner property inventory would not invalidate the inventory search. Cf. *Commonwealth v. Freiberg*, 405 Mass. 282, 300, cert. denied, 493 U.S. 940 (1989) (defects in return of warrant should be avoided but do not invalidate otherwise properly issued and executed search warrant).

We are also unpersuaded by the defendant's contention that the inventory search was invalid because Pagliaroni failed to comply with that part of General Order TRF-09 that provides that when a vehicle is to be towed, the police are required to asked the driver "if there is a preference of choice for a particular towing company, and such choice will be honored [absent circumstances not here presented]." General Order TRF-09, *supra*. The argument fails for the reason, among others, that even had the defendant been advised that he could select a towing company and had exercised that choice, an inventory search would have nonetheless been conducted pursuant to the mandate that a "detailed inventory shall be made whenever a vehicle is ordered towed . . . [p]ursuant to a lawful arrest when the vehicle would be left unattended." General Order TRF-10.

Further, we do not accept the defendant's reading of *Whren* v. *United States*, 517 U.S. 806, 812 (1996) (*Whren*). See *Commonwealth* v. *Lelos*, 61 Mass. App. Ct. 626, 631 (2004), citing *Whren, supra*. He reads *Whren* to hold that although an officer's subjective motive does not generally invalidate objectively reasonable behavior for purposes of the Fourth Amendment to the United States Constitution, a subjective motive, i.e., to search for evidence, does invalidate an inventory search of a motor vehicle. A close reading of *Whren*, however, makes clear that the United States Supreme Court's holding does not support the defendant's argument. In *Whren, supra* at 811-812, the Court took pains to explain that the "exemption from the need for probable cause (and warrant), which is accorded to searches made for the purpose of inventory or administrative regulation, is not accorded to searches that are *not* made for those purposes" (emphasis in original). As we read *Whren* and its progeny, they hold that probable cause is unnecessary for an

inventory search but is required for those searches that are neither conducted for inventory purposes nor administrative in nature. See *Commonwealth* v. *Garcia*, 409 Mass. at 679-681; *Commonwealth* v. *Murdough*, 428 Mass. 760, 765 (1999).

We conclude that the circumstances were such as to mandate Pagliaroni to conduct an inventory search. According to the guidelines set out in General Order TRF-10, *supra*, he was required to search the interior of the vehicle, the glove compartment and the trunk, all closed but unlocked containers, and "other places where property is likely to be kept." It is undisputed that the top of the console served as an armrest that could be lifted open for access to a storage container comparable to a glove compartment.

There remains the question whether the bag of white powder was discovered during a permissible inventory search or whether that search turned investigatory when Pagliaroni, being unable to release the cup holder from the console, used his flashlight to determine what was beneath it. For purposes of decision, we will assume that Pagliaroni's attempt to release the double cup holder and his use of a flashlight to look beneath it exceeded the limits of an otherwise valid inventory search.

Notwithstanding that assumption, we conclude that Pagliaroni's search beneath the double cup holder was based on probable cause and was, therefore, a valid search under the automobile exception to the rule requiring a search warrant. See *Commonwealth* v. *Hill*, 51 Mass. App. Ct. 598, 605 (2001), and cases therein cited.

We again assume without deciding that probable cause to search the vehicle did not exist at the time Pagliaroni first saw ash or white powder on the armrest or even when he had a better view of the substance as the defendant stepped out of the car. See note 3, *supra*. The fact is that Pagliaroni took no action based on those observations. Indeed, he made no attempt to look beneath the double cup holder until after he had entered the vehicle, lifted up the armrest for purposes of conducting the mandated inventory search, and saw white powder spill out onto the seat and floor.

Although Pagliaroni did not testify as to "what experience and particularized observations caused him to conclude that the

white powder constituted cocaine," we do not think testimony as to his expertise was required for purposes of evaluating probable cause. Rather, we think it a matter of common sense that a police officer who is lawfully in a position to observe white powder inexplicably spilling from a storage compartment in a vehicle and to which the driver has close and immediate access has probable cause to search that compartment.

Further, and contrary to the judge's conclusion, we draw no inference from the fact that Pagliaroni might not have extended his inventory search beyond areas other than the storage compartment. Because the bag of white powder was seized pursuant to an investigatory search based on probable cause, Pagliaroni was not required to list the seized bag of powder on the vehicle inventory report. Further, because the substance in question was taken from the defendant's vehicle and not his person, Pagliaroni had no reason for listing the seized substance on the prisoner property inventory.

3. *Conclusion.* The order allowing the defendant's motion to suppress is reversed, and the matter is remanded to the Superior Court for further proceedings.

*So ordered.*