COMMONWEALTH VS. WILLIAM M. DIFALCO.

No. 07-P-1753.

Berkshire. October 2, 2008. - December 23, 2008.

Present: CYPHER, GRASSO, & KANTROWITZ, JJ.

*Practice, Criminal,* Motion to suppress. *Constitutional Law,* Search and seizure. *Search and Seizure,* Automobile, Inventory, Container.

A District Court judge did not err in allowing a criminal defendant's pretrial motion to suppress a handgun that a police officer found in a closed, locked safe during an inventory search of an automobile, where the applicable written police procedures did not provide explicit authority for the officer to unlock a closed container and inventory the contents, and thus, the officer conducting the search could do no more than inventory the locked safe as a single unit. [402-405]

COMPLAINT received and sworn to in the Northern Berkshire Division of the District Court Department on February 7, 2007.

A pretrial motion to suppress evidence was heard by *Michael J. Ripps,* J.

An application for leave to prosecute an interlocutory appeal was allowed in the Supreme Judicial Court for the county of Suffolk by *Francis X. Spina,* J., and the appeal was reported by him to the Appeals Court.

*James F. Petersen,* Assistant District Attorney, for the Commonwealth.

*Mark J. Pasquariello* for the defendant.

CYPHER, J. This appeal presents the question whether the opening of a locked container, a small safe, to which the police found the key in the course of an inventory search of an automobile, requires suppression of a gun discovered inside the safe. We conclude suppression is required.

This interlocutory appeal by the Commonwealth from a decision of a District Court judge was allowed by a single justice of

the Supreme Judicial Court, pursuant to Mass.R.Crim.P. 15(b), as appearing in 422 Mass. 1501 (1996), and reported to this court for determination. The background facts as found by the judge after a hearing are as follows.

On February 6, 2007, North Adams police, acting on an arrest warrant, found the defendant seated alone in his car in a parking lot of a Dunkin' Donuts establishment. After the defendant's arrest, the police determined that the car, which had been parked in a travel portion of the parking lot, had to be towed.[1] An officer began an inventory procedure as required by the policies of both the North Adams police department and the State police.[2] After completing examination of the interior, the officer used the defendant's car keys to open the trunk. Among other items in the trunk, the officer found a small locked safe, six inches by eight inches by fifteen inches. Using a key on the ring of car keys, the officer opened the safe, observing a "blue personal file folder, a watch, two rings and a loaded Raven .25 caliber handgun with a defaced serial number."

The officer then called a State police sergeant and supervisor of the Berkshire County drug task force, who took photographs of the car and the various items found. The sergeant took the safe and its contents to the North Adams police station and the car was towed. No motor vehicle inventory form was completed and filed.

*Discussion.* Our review of a motion to suppress requires that we accept the judge's subsidiary findings which are not clearly erroneous, and that we independently review the ultimate findings and conclusions of law. *Commonwealth* v. *Baptiste*, 65 Mass. App. Ct. 511, 514-515 (2006), and cases cited.

In a two-step decision, the judge first concluded that the police lawfully opened the safe, opining that this action was consistent

[1]Because of our decision, we need not consider the defendant's argument that the police were without adequate reason to tow his car. In any event, the defendant does not dispute the judge's specific finding that the car was not parked in a space, "but was in the drive through or travel portion of the lot." The decision of the police to tow the car was appropriate in these circumstances. Compare *Commonwealth* v. *Delong*, 60 Mass. App. Ct. 122, 128 (2003).

[2]The North Adams officer who carried out the inventory search was also assigned to the Berkshire County drug task force, and testified that he was subject to both policies.

with the reasons underlying an inventory search.[3] We begin our review mindful that "art. 14 of the [Massachusetts] Declaration of Rights requires the exclusion of evidence seized during an inventory search not conducted pursuant to standard police procedures, which . . . must be in writing." *Commonwealth* v. *Bishop*, 402 Mass. 449, 451 (1988). Because the police in this case had available written policies of the North Adams police department and the State police, we focus our review on what those policies require when a closed, locked container, such as the safe in this case, is found during an inventory search.

With respect to closed areas in vehicles, such as a glove compartment, a trunk, and containers, the pertinent provisions of the Department of State Police, General Order TRF-10 (Jan. 1998) include the following: the glove compartment and trunk should be inventoried "unless they are locked and there is no key available"; "[l]ocked containers should be inventoried as a single unit"; and "[a] search warrant should be obtained before the search of a locked container (or the glove compartment and trunk if they are locked and the officer does not have a key)." See *Commonwealth* v. *Baptiste, supra* at 516-517.

The pertinent provisions of the North Adams policy, effective 1999, provide in § IV.B that inventory is to be taken of "unlocked glove/map box areas" and that "the trunk should be unlocked and inventoried"; and in § IV.B.1 that if the "glove/map box and/or trunk are locked and the officer does not have a key, these areas should not be inventoried." Further, § V.A states that

---

[3]In the second step in his decision, the judge found that a motor vehicle inventory form was not completed because the officer said it was so cold his pen would not write. The judge ruled that the failure to write out and file the form, required in both police policies, invalidated the search, and ordered suppression of the gun.

We think that the failure to write out a vehicle inspection report has little connection to whether the opening and inspection of the safe was permissible. Compare *Commonwealth* v. *DeVlaminck*, 32 Mass. App. Ct. 980, 981 (1992). While it has been said that "any defect in the vehicle inventory report . . . would not invalidate the inventory search," *Commonwealth* v. *Baptiste, supra* at 518, no Massachusetts appellate decision has decided the effect, if any, of the total absence of such a form. Because the form provides documentation related to safeguarding the car and its contents, cf. *Commonwealth* v. *Muckle*, 61 Mass. App. Ct. 678, 682-683 (2004), we decline to comment on the effect of its absence on the administrative methods used by the police to safeguard the car and its contents. See *Commonwealth* v. *DeVlaminck, supra* at 981.

"[a]ny containers or packages should be inventoried"; and § V.B states that "[c]ontents of unlocked containers shall be inventoried separately."[4]

While it reasonably may be inferred that both policies permit a locked glove compartment or trunk to be opened if an officer has the key, neither policy indicates whether a locked container may be opened if the officer has a key.

The State police policy distinguishes a locked container from locked glove compartments and trunks by specifically requiring that a locked container be inventoried as a single unit, and that police are required to obtain a search warrant to open it.[5] The North Adams policy states that containers and packages should be inventoried, specifically providing that "[c]ontents of unlocked containers shall be inventoried separately," but is silent as to locked containers. We think that such a silence does not permit an inference, as the judge appears to have made, that a locked container may be opened if the police have a key.

Reading the two policies together, we conclude, contrary to the judge's interpretation, that there is no explicit authority for the police to unlock a closed container and inventory the contents, and that the officer in this case could do no more than inventory a locked container as a single unit. "We have made it clear that, if police open a closed container during an inventory search in the absence of a specific written procedure requiring them to do so, then any evidence they discover in the container must be suppressed." *Commonwealth* v. *Garcia*, 409 Mass. 675, 684-685 (1991). See *Commonwealth* v. *Muckle*, 61 Mass. App. Ct. 678, 684 (2004) (police may open closed but unlocked containers where written inventory search so provides).[6] For these reasons

---

[4]The Commonwealth includes in our record what appears to be an outdated policy of the North Adams police in a 1987 letter, signed by the director of police services, addressed to all police personnel. In view of our decision, it is unnecessary to determine whether either the police or the judge relied on that letter in this case.

[5]See *Commonwealth* v. *Caceres*, 413 Mass. 749, 754 n.5 (1992): "The regulations [State Police Motor Vehicle Inventory Procedure OPR-26A] direct that locked personal containers should be inventoried as a unit and should not be opened 'unless the officer has reasonable suspicion there are explosives, weapons or other substances that present[] . . . a potential danger to the officer or the public.' "

[6]"While the cited cases reflect that, under proper standardized written pro-

we conclude that the defendant's motion to suppress should be allowed, and that it is unnecessary to examine in detail the reasons given by the judge in the second step of his decision (see note 3, *supra*).

> *Order allowing motion to suppress affirmed.*

cedures, police may conduct an inventory search of both the locked passenger compartment and the locked trunk of a properly impounded vehicle, as well as any closed containers within these compartments, . . . the Supreme Judicial Court has yet to decide whether *locked* containers may be inventoried without offending Article 14." Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 15-4[b], at 15-10 (2008-2009).