## Commonwealth *vs.* Juan Torres.

No. 12-P-919.

Bristol. January 7, 2014. - March 5, 2014.

Present: Katzmann, Fecteau, & Milkey, JJ.

*Firearms. Motor Vehicle,* Firearms. *Search and Seizure,* Inventory. *Constitutional Law,* Search and seizure. *Practice, Criminal,* Motion to suppress.

A Superior Court judge properly denied a criminal defendant's pretrial motion to suppress a firearm discovered during an inventory search (of the automobile he was driving) that was not documented on an inventory form required by the police department's policy, where, given that the Commonwealth was able to demonstrate that the inventory search was justified, was not undertaken as a pretext, and was conducted in accordance with the police department's written policies, the failure by police to complete the required documentation did not by itself void an otherwise valid inventory search. [53-55]

Indictments found and returned in the Superior Court Department on July 30, 2010.

A pretrial motion to suppress evidence was heard by *Richard T. Moses*, J., and the cases were tried before *Robert J. Kane*, J.

*Susan E. Taylor* for the defendant.

*Owen J. Murphy*, Assistant District Attorney, for the Commonwealth.

Milkey, J. Following a jury trial in Superior Court, the defendant was convicted of carrying a firearm without a license, G. L. c. 269, § 10(*a*), and of unlawful possession of a large capacity feeding device, G. L. c. 269, § 10(*m*). These convictions were based on a gun that the police discovered during an inventory search of a car that the defendant had been driving. On appeal, the defendant argues that his motion to suppress the gun should have been allowed because of the failure by police to complete an inventory search form. We affirm.

*Background.* The facts are not in dispute.[1] On July 2, 2010, Swansea police officer Donald Dibiasio was monitoring traffic on Route 6 in Swansea, while parked at a mall adjacent to the highway. After observing the defendant's car drive through a stop sign, Dibiasio pulled the car over to the side of Route 6. At that point, the highway has two lanes in each direction and no break-down lane. Thus, the defendant's stopped vehicle was obstructing traffic in one of the two travel lanes in that direction.

Through a routine check of the defendant's license and registration, Dibiasio learned that the defendant's license had been suspended. Because the defendant was alone in the car and the car was obstructing traffic, Dibiasio determined that the car would have to be towed from the scene (a decision that was approved by Dibiasio's superior). Dibiasio informed the defendant that he would be summonsed for driving with a suspended license and that the vehicle was going to be towed. While the defendant was outside the vehicle but still present at the scene, and while awaiting the tow truck's arrival, Dibiasio began to inventory the car's contents in accordance with the town's written policies.

When he looked under the driver's seat, Dibiasio saw what appeared to be a gun and immediately reported this discovery to his supervisor. After the defendant confirmed that the object was a gun and that he had no license to carry it, Dibiasio placed him under arrest. Dibiasio's supervisor then arrived at the scene and instructed Dibiasio not to touch the vehicle further and that a detective would be arriving to take over the case. Dibiasio then transported the defendant back to the station for booking, while leaving further investigation and the handling of the vehicle to others.

The town's written policies require that inventory searches be documented in a particular manner, including through the completion of a "Motor Vehicle Inventory Control form." That form is supposed to list, inter alia, "items found in the vehicle" as well as "[p]roperty removed from the vehicle." The police are also required to "document all facts, information and

---

[1] The defendant affirmatively accepts all of the motion judge's factual findings.

circumstances justifying the towing of the vehicle." Neither Dibiasio, nor any other officer, ever completed the required inventory form.[2] Although the judge made no findings on why the police failed to complete the inventory search form, we note that Dibiasio himself highlighted that his efforts to inventory the contents of the car were interrupted by his discovery of the gun, and that the matter was then transferred to the detective who was called to the scene.

*Discussion.* The dispute before us is exceedingly narrow. The defendant acknowledges that the traffic stop, the decision to tow the vehicle, and the decision to conduct an inventory search all were proper. The defendant further acknowledges that the search itself was done in accordance with the terms of the town's written policies and that Officer Dibiasio's conduct at the scene was entirely reasonable. For its part, the Commonwealth acknowledges that the police failed to document their inventory search in the manner required by the town's written policies. The question before us is whether that noncompliance by itself voids an otherwise valid inventory search so as to require suppression of the evidence found. We left that question open in *Commonwealth* v. *DiFalco*, 73 Mass. App. Ct. 401, 403 n.3 (2008).

It has long been established that inventory searches must be done in compliance with written standard police operating procedures. *Commonwealth* v. *Garcia*, 409 Mass. 675, 681 (1991). "Standard procedures reduce the discretion of police to search at will, and so lessen the possibility that police will use inventory procedures as investigative searches." *Ibid.* Here, the police were unquestionably justified in conducting an inventory search, and the defendant makes no claim that it was done as a pretext. Moreover, as noted, the search itself was conducted in full compliance with the town's written policies. Where the police fell short was in documenting the search that had already been conducted. We agree with the Commonwealth that this

---

[2]Officer Dibiasio apparently did complete an arrest report, as the record indicates that he was shown that report at the motion hearing in order to refresh his recollection. However, that report was never admitted in evidence, and thus — as the motion judge specifically found — the judge lacked a basis for concluding that the arrest report itself provided the information that the inventory search form was supposed to document.

sort of after-the-fact documentation error does not by itself invalidate an otherwise valid search.[3]

Although in *Commonwealth* v. *DiFalco, supra,* we did not reach the question whether the complete absence of a required form invalidates an inventory search, we did note there that "the failure to write out a vehicle inspection report has little connection to whether the [search at issue there] was permissible." *Id.* at 403 n.3, citing *Commonwealth* v. *DeVlaminck,* 32 Mass. App. Ct. 980, 981 (1992) (validity of police action opening a closed container found in a car does not turn on whether police subsequently complied with procedures requiring the tagging and storage of such containers). Similarly, in *Commonwealth* v. *Baptiste,* 65 Mass. App. Ct. 511, 518 (2006), we upheld a vehicle search while noting that "any defect in the vehicle inventory report . . . would not invalidate the inventory search."[4] In support of that proposition, we cited to *Commonwealth* v. *Freiberg,* 405 Mass. 282, 300, cert. denied, 393 U.S. 940 (1989) ("error in the return [of a search warrant] does not constitute ground for voiding the otherwise lawful search"). See generally *Commonwealth* v. *Kaupp,* 453 Mass. 102, 114-115 (2009) ("required warrant return procedures are ministerial, and failure to comply therewith is not ground for voiding an otherwise valid search"), quoting from *Commonwealth* v. *Cromer,* 365 Mass. 519, 521 n.3 (1974).

We reaffirm our view that the case law on search warrant

---

[3]We caution that we are not saying that police errors in documenting inventory searches are irrelevant. Where the validity of an inventory search itself is being challenged, there may well be situations where such noncompliance could play an important factor in determining whether suppression was required.

[4]The defendant argues with some force that this statement is dicta. In *Baptiste,* the police stopped a driver for speeding and found that he had a suspended license and an outstanding arrest warrant. Before the car was towed, the police discovered a bag of cocaine inside of it. The defendant argued inter alia that the discovery of the cocaine was not the product of a valid inventory search, both because the police failed to list the cocaine on the required vehicle inventory report and because the particular search exceeded the scope of an inventory search. We assumed arguendo that the search "exceeded the limits of an otherwise valid inventory search," and upheld it as a valid investigatory search (noting along the way that because it was a valid investigatory search, there was no need to list the cocaine on the inventory report). *Id.* at 519-520.

returns provides a useful analogy. Here, as there, if the Commonwealth is able to demonstrate that its search was both justified and otherwise properly executed, then excluding the evidence discovered based on after-the-fact procedural deficiencies would not serve the purposes for which the exclusionary rule was established. See *Commonwealth* v. *Aldrich*, 23 Mass. App. Ct. 157, 162-163 (1986). See also *Freiberg, supra.* Finally, we note that courts in other jurisdictions that have addressed the same issue have come to the same conclusion. See, e.g., *United States* v. *Loaiza-Marin*, 832 F.2d 867, 869 (5th Cir. 1987) ("[T]he agent's failure to complete the inventory forms does not mean that the search was not [a valid] inventory search").[5]

*Conclusion.* The Commonwealth was able to demonstrate that its inventory search was justified, was not undertaken as a pretext, and was conducted in accordance with the town's written policies. Because we agree with the motion judge that the failure by police to complete the required documentation does not by itself void an otherwise valid inventory search, we conclude that the motion to suppress was properly denied.

*Judgments affirmed.*

---

[5]In *Loaiza-Marin*, as here, no inventory search form was completed after the officer who was conducting the inventory search turned the contraband over to another officer upon discovering it. See *United States* v. *Trullo*, 790 F.2d 205, 206 (1st Cir. 1986) (declining to "hold that the officer's failure, technically, to follow the inventory form procedures for valuables meant it was not an inventory search").